**HILL WALLACK LLP**
202 Carnegie Center
Princeton, New Jersey 08543
(609) 924-0808
ghh@hillwallack.com
Attorneys for Defendants,
George P. Owen and George A. Donzella

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDENA AMENTLER and MICHAEL PERSELAY, | CIVIL ACTION NO. 3:08-CV-0351 |
| Plaintiffs, | |
| v. | **Document electronically filed** |
| 69 MAIN STREET, LLC d/b/a FOX AND HOUND TAVERN; GEORGE P. OWEN; TOM J. STINER; GEORGE A. DONZELLA; and JEFFERY J. KROL, | **MOTION DATE:    December 15, 2008** |
| Defendants | |
| and | |
| GEORGE P. OWEN and GEORGE A. DONZELLA, | **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THIRD-PARTY COMPLAINT** |
| Third-Party Plaintiffs | |
| v. | |
| QBE INSURANCE COMPANY and EASTGUARD INSURANCE COMPANY, | |
| Third-Party Defendants | |

Gerard H. Hanson, Esq.
**Of Counsel and On the Brief**

Todd J. Leon, Esq.
**On the Brief**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ....................................................................4

LEGAL ARGUMENT ........................................................................10

### POINT I

NEW JERSEY SUBSTANTIVE LAW APPLIES TO THE CURRENT
INSURANCE COVERAGE DISPUTE ..........................................................10

### POINT II

QBE OWES A DUTY TO DEFEND AND INDEMNIFY GEORGE OWEN AND
GEORGE DONZELLA IN THE UNDERLYING LITIGATION ....................................10

    A.    George Owen and George Donzella Are Entitled to Coverage
from QBE for Allegations Made Against Them in the
Underlying Complaint. ..........................................................12

    B.    Owen and Donzella Qualify as "Insureds" on the QBE Policy.............12

    C.    QBE is Obligated to Pay Damages for "Bodily Injury" and
"Personal Injury." ..............................................................13

    D.    The "Intentional Acts" Exclusion of the QBE Policy Does Not
Apply to the Claims Against Owen and Donzella. ...................................14

    E.    The "Employer's Liability" Exclusion Does Not Preclude Coverage
for Counts XII and XIII. ..........................................................18

### POINT III

EASTGUARD HAS FAILED TO PROPERLY DISCHARGE ITS DUTY
TO DEFEND GEORGE OWEN AND GEORGE DONZELLA ....................................19

### POINT IV

BASED UPON MULTIPLE CONFLICTS OF INTEREST, OWEN AND
DONZELLA MUST BE PERMITTED TO SELECT THEIR OWN COUNSEL,
WITH QBE INSURANCE COMPANY AND EASTGUARD
INSURANCE COMPANY CONTRIBUTING TOWARDS THE COSTS
OF THEIR DEFENSE ......................................................................23

**POINT V**

THIRD-PARTY PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT
OF THE COUNSEL FEES EXPENDED BOTH IN THEIR DEFENSE
IN THE UNDERLYING ACTION AND IN THE PROSECUTION
OF THE DECLARATORY JUDGMENT ACTION. ......................................................25

      A.     QBE and East Guard Must Reimburse Owen and Donzella
             For the Costs Incurred in Defending the Underlying Action......................25

      B.     Owen and Donzella Are Entitled to Reimbursement of the
             Attorneys' Fees and Costs Incurred in the Prosecution of the
             Declaratory Judgment Action. ..................................................................25

**CONCLUSION** ............................................................................................................29

### PRELIMINARY STATEMENT

The Underlying Complaint is a hybrid of claims by both plaintiffs relating to events that occurred at and after a July 4, 2007 party at the home of the third party plaintiffs, George Owen and George Donzella. The purpose of the party was to market the business, 69 Main Street LLC, d/b/a the Fox and Hound Tavern, which was owned and/or operated by the defendants – George Owen, George Donzella, Tom Stiner and Jeffrey Krol. The plaintiff, Michael Perselay, was the executive chef of the Fox and Hound Tavern, and brought his girlfriend, the plaintiff Edena Amentler, to the July 4 party at the home of Owen and Donzella. Both underlying plaintiffs were "guests" at the event. Amentler alleges that she was sexually assaulted by the co-defendant, Jeffrey Krol, while at the party. Perselay, in turn, alleges that following the alleged sexual assault he was wrongfully terminated and discriminated against by his employer (Fox and Hound Tavern).

At the time of the alleged incident, the Fox and Hound was insured under two policies of insurance: a Commercial General Liability Policy issued by QBE Insurance Company ("QBE"); and a Workers' Compensation/Employers' Liability Policy issued by EastGuard Insurance Company ("EastGuard"). Subsequent to the filing of the Complaint, defendants Owen and Donzella tendered the claim to both carriers. Neither QBE nor EastGuard has properly assumed its duty to defend Owen and Donzella, which gives rise to the Motion for Summary Judgment.

QBE, after initially disclaiming coverage, extended a very limited offer to assume Owen and Donzella's defense as to two of the claims of Amentler, but subject to a strict Reservation of Rights. Defendants Owen and Donzella did not execute the proposed onerous Reservation of Rights Letters from QBE. To do so would have resulted in the moving parties conceding to QBE's coverage positions, which are wrong. For example, neither Owen nor Donzella will or

1

should concede that the Intentional Acts Exclusion applies to them. Neither of the moving parties is accused of sexual assaulting the plaintiff; they merely hosted the party. Nor is the "Employer's Liability" Exclusion cited by QBE applicable in this case, since Perselay was not injured "in the course of his employment," and Amentler was never employed by the Fox and Hound. Notwithstanding, QBE's prior offer to provide a limited defense was conditioned upon Owen and Donzella agreeing to QBE's denial of coverage as to the other causes of action.

EastGuard, on the other hand, has acknowledged that it owes a duty to defend, but has assigned one attorney (George Karousatos, Esq. of Biancamano & DiStefano, P.C.) to represent all of the defendants in this action, including the corporate entity (Fox and Hound); the alleged sexual assaulter (Krol); and each of the other three individual defendants (Stiner, Donzella and Owen) against only some of the Counts. EastGuard has refused to acknowledge the obvious - that this joint representation creates a conflict of interest, notwithstanding direct challenges by counsel for the moving party defendants, as well as a "Quality Control" warning from the Clerk of this court.

The net result of the coverage determinations made by QBE and East Guard is the procedural oddity that each of the defendants is being represented by two attorneys. As a result of this "dual" representation, Owen and Donzella (as did each of the other defendants) had two Answers filed on their behalf in this case -- one by this firm (in response to Counts I, II, III, IV, V, VI, XII and XIII), and one by counsel (Mr. Karousatos) assigned by EastGuard (in response to Counts VII, VIII, IX, X, XI, XIV and XV).

Owen and Donzella thus sought and obtained leave of this court to assert a Third-Party Complaint against QBE and EastGuard, which seeks Judgment declaring that: (1) both carriers owe Owen and Donzella a defense and indemnity obligation with respect to the Underlying

2

Complaint; and (2) Owen and Donzella have the right to select their own counsel to defend them against the Underlying Action, which duty to defend shall be satisfied by QBE and EastGuard funding the counsel fees and litigation expenses incurred by counsel selected by the moving parties to represent their interests.

With respect to QBE, the CGL insurer's limited and onerous offer to defend Owen and Donzella as to two counts of the 13-Count Complaint, which is subject to Owen's and Donzella's acknowledgment that QBE has no coverage obligation as to the other causes of actions, is contrary to well-established law. QBE is wrongfully attempting to impute the alleged intentional conduct of the codefendant (Krol) to Owen and Donzella in order to avoid its indemnity obligation by triggering the Intentional Acts Exclusion. Similarly, QBE wants Owen and Donzella to acknowledge that the Employers Liability Exclusion applies, which ignores the fact that the plaintiff Amentler was never employed by the defendants.

With respect to EastGuard, the Workers' Compensation insurer is putting its own interests ahead of its insureds by insisting that one law firm, of their own choice, continue to represent all defendants, notwithstanding the obvious conflicts that exist among the various codefendants, who have asserted Cross-Claims against one another. The conflict is so obvious that the Clerk identified it on the ECF docket. Thus, the moving parties are compelled to seek an Order from this court declaring that the dual representation is a conflict. The remedy, per well-established law, is for this court to designate counsel, with the defense being funded by EastGuard and QBE.

For the reasons set forth in more detail hereinafter, Owen and Donzella respectfully submit that their Motion for Summary Judgment must be granted and QBE and EastGuard compelled to properly assume their duties to defend them in the Underlying Action.

3

## STATEMENT OF FACTS[1]

### Factual Background

This litigation arises out of an incident which occurred on July 4, 2007 at the home of defendants George Donzella and George Owen. On that date, the Fox and Hound Tavern, which is a business entity owned and operated by George Donzella, Tom Stiner and Jeffrey Krol, held a party at the Donzella-Owen home. The purpose of the party was to market the business of 69 Main Street LLC, d/b/a the Fox and Hound Tavern.

One of the underlying plaintiffs, Michael Perselay, was the executive chef at the Fox and Hound Tavern. Perselay brought his girlfriend, (the plaintiff Edena Amentler), to the party at the Donzella-Owen home. During the evening, Krol, one of the owner-operators of the Fox and Hound, allegedly sexually assaulted Amentler. Subsequent to the alleged sexual assault of Amentler by Krol, the Fox and Hound asked Perselay to take a one-week paid leave of absence.

### The Underlying Complaint

The plaintiffs (Amentler and Perselay) filed the Underlying Complaint on or about January 25, 2008. The pleading names the following defendants: 69 Main Street LLC, d/b/a Fox and Hound Restaurant; Owen; Donzella; Stiner; and Krol. The Complaint asserts the following causes of action:

- Count I:      Assault and Battery
- Count II:     False Imprisonment
- Count III:    Assault and Battery with a Deadly Weapon
- Count IV:     Placing One in an Enhanced Risk of Developing HIV or AIDS
- Count V:      Intentional Infliction of Emotional Distress

---

[1]    This narrative summary of background and relevant facts does not include specific references to the record or numbered paragraphs. Such references are contained in third-party defendant's Statement of Material Uncontested Facts as mandated by Loc.R.Civ.Pro. 56.1.

4

- Count VI          Negligent Infliction of Emotional Distress

- Count VII         New Jersey Law Against Discrimination -- Sexually Hostile Work Environment

- Count VIII        New Jersey Law Against Discrimination -- Quid Pro Quo Sexual Harassment

- Count IX          New Jersey Law Against Discrimination -- Unlawful Retaliation

- Count X           New Jersey Law Against Discrimination -- Aiding and Abetting Liability

- Count XI          New Jersey Law Against Discrimination -- Failure to Maintain a Safe Workplace

- Count XII         Dram Shop Act and Failure to Maintain a Safe Environment

- Count XIII        Dram Shop Act and Serving Alcohol to Minors

On January 31, 2008, the Fox and Hound terminated Perselay's "at will" employment. Plaintiffs then filed an Amended Complaint on February 2, 2008, which added causes of action alleging violations of Title VII of the Civil Rights Act (Count XIV) and the Conscientious Employee Protection Act (Count XV).

### Insurance Policies Issued to Defendants

At the time of the underlying incident on July 4, 2007, the Fox and Hound Tavern was insured under two insurance policies that are implicated by the current case: a Commercial General Liability ("CGL") Policy issued by QBE Insurance Company; and a Workers' Compensation/Employers' Liability Policy issued by EastGuard Insurance Company. These policies extended coverage to the moving party defendants. Despite the tender of coverage to each of the aforementioned insurers, neither carrier has properly assumed its duty to defend Owen and Donzella. Because of the impact of the coverage afforded by both insurers, defendants will address each policy in turn.

### The CGL Policy

The CGL Policy issued by QBE to the Fox and Hound Tavern contains numerous Coverage Parts, including a Commercial General Liability Coverage Form and a Liquor Liability Coverage Part. Prior to the July 4 party that gives rise to the Underlying Action, Owen and Donzella obtained an Endorsement to the Commercial General Liability Part of the QBE CGL Policy that provides as follows:

> The Commercial General Liability Coverage Part has been amended as follows:
>
> The following Additional Insured-Designated Person or Organization has been added with respects to the event on 7/4/07:
>
> George Donzella & George Owen
> 22 Terrill Drive
> Califon, NJ 07830

On or about January 29, 2008, just four days after the Underlying Complaint was filed, defendants Owen and Donzella forwarded a copy of the pleading to the authorized representative of QBE Insurance Company – Specialty Insurance Agency, Inc. of Brick, New Jersey. Thereafter, on February 4, 2008, counsel for the underlying plaintiffs forwarded to Specialty Insurance Agency a copy of the Amended Complaint filed in the Underlying Action.

On February 12, 2008, QBE Insurance Company issued a Declination Letter to all of the defendants in the Underlying Action, based in part on "late notice" (Exhibit E). By way of correspondence dated February 25, 2008, Owen and Donzella challenged the disclaimer of coverage by QBE (Exhibit F). The CGL insurer responded to the challenge with a proposed Reservation of Rights Letter dated March 12, 2008. Although QBE acknowledged a duty to defend 69 Main Street LLC, Donzella, Owen and Stiner[2], the scope of the proposed coverage was severely limited. First, the carrier disclaimed coverage as to all defendants for the claims by

---

[2] QBE did not acknowledge any duty to defend Krol.

both plaintiffs on Counts I through VI.  QBE's position in this regard was based upon the "Intentional Acts" Exclusion of its CGL Policy.  Second, although QBE agreed to defend Counts XII and XIII of the Underlying Complaint, which QBE determined to relate to "Dram Shop violations" (Exhibit G), it purported to limit its coverage obligation even on these claims to only those causes of action asserted by Edena Amentler.  QBE disclaimed coverage on any claims by Michael Perselay on Counts XII and XIII by referring to the "Employer's Liability" Exclusion of its Policy.  In issuing its proposed Reservation of Rights Letter, QBE also once again raised a "late notice" defense to Owen and Donzella's request for coverage.  Finally, the proposed Reservation of Rights Letter indicated that QBE "has the right to select counsel and control the defense in accordance with the policy and will instruct and expects its defense counsel to represent the interests of the insured with respect to plaintiff Amentler's claims in Counts XII and XIII."  QBE Insurance Company disclaimed coverage as to all of the other causes of action pled in the Underlying Action.

### The Employer's Liability Policy

The second implicated insurance policy is the Workers' Compensation/ Employers' Liability Policy issued by EastGuard Insurance Company to 69 Main Street LLC, d/b/a the Fox and Hound Tavern.  Owen and Donzella tendered the underlying claim to EastGuard seeking defense and indemnification pursuant to the mandate of Schmidt v. Smith, 155 N.J. 44 (1998). On February 4, 2008, EastGuard issued Reservation of Rights Letters to Owen and Donzella acknowledging its duty to defend and indemnify Owen and Donzella with respect to Counts VII, VIII, IX, X and XI of the initial Complaint filed by Edena Amentler and Michael Perselay, which related to plaintiffs' causes of action alleging violations of the New Jersey Law Against Discrimination (the "Employment-Related claims") (Exhibit I).  On February 8, 2008, EastGuard issued Supplemental Reservation of Rights Letters to Owen and Donzella further acknowledging

its duty to defend and indemnify Owen and Donzella against Counts XIV and XV of the Amended Complaint, which assert plaintiffs' causes of action alleging violations of Title VII of the Civil Rights Act (Count XIV) and the Conscientious Employee Protection Act (Count XV) (Exhibit J).

Subsequent to its issuance of the Reservation of Rights Letters on February 4 and 8, 2008, EastGuard retained **one** attorney (George Karousatos, Esq. of Biancamano & Di Stefano, P.C.) to defend the interests of **all** of the defendants to the Underlying Action – including 69 Main Street LLC, d/b/a Fox and Hound Tavern; Owen; Donzella; Stiner; and Krol. On February 25, 2008, Owen and Donzella wrote to EastGuard to challenge the insurer's decision to retain one attorney to represent all of the defendants in the Underlying Action; asserting the joint representation of all defendants constituted a conflict of interest and citing applicable New Jersey law, Burd v. Sussex Mut. Ins. Co., 56 N.J. 383 (1970), on the conflict of interest issue.

On March 10, 2008, Owen and Donzella again wrote to EastGuard seeking to confirm that the Workers' Compensation/Employers' Liability carrier acknowledged its duties to defend and indemnify them in the Underlying Action. The March 10, 2008 letter once again raised the "conflict of interest" issue created by EastGuard's decision to assign the defense of all insureds to one attorney. The follow-up letter also cited both New Jersey (Burd) and California law (San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc., 162 Cal.App.3d 358, 364, 208 Cal.Rptr. 494 (1984) and Cal. Civ. Code § 2860) on the conflict of interest issue, as well as the New Jersey Supreme Court's decision in Dunne v. Fireman's Fund Ins. Co., 69 N.J. 244, 252 (1976), which holds that where, as here, there are conflicts between the insured's and insurer's interest, the insured should select its own counsel. On March 13, 2008, EastGuard once again

8

reaffirmed its position that it does not perceive that a conflict of interest is created by its decision to assign one attorney to represent all defendants.

## Procedural History

On or about March 26, 2008, plaintiffs Amentler and Perselay filed a Motion to Strike Defendants' Multiple Answers to Plaintiffs' Amended Complaint. The thrust of plaintiffs' application was that the filing of multiple Answers on behalf of each of the defendants violated the Federal Rules of Civil Procedure.[3] Owen and Donzella opposed this Motion and filed a Cross-Motion for Leave to File a Third-Party Complaint against QBE and EastGuard. An Order granting Owen and Donzella's Cross-Motion was entered by the Hon. Tonianne J. Bongiovanni, U.S.M.J. on August 21, 2008. Thereafter, by letters dated August 28, 2008 Owen and Donzella effectuated service upon both out-of-state carriers via the New Jersey Department of Banking and Insurance ("DOBI"). DOBI, in turn, accepted service as to both carriers on September 2, 2008. QBE thereafter filed its Answer to the Third-Party Complaint on September 19, 2008. EastGuard has failed to Answer.

The instant Motion for Summary Judgment follows.

---

[3]    One of the Answers (Document 16 on the District Court's Docket Sheet) was filed on behalf of all defendants by the attorney retained by EastGuard (George Karousatos, Esq.) and responds to Counts VII, VIII, IX, X, XI, XIV and XV. The other Answer (Document 17 on the District Court's Docket Sheet) was filed by Hill Wallack LLP and responds to the allegations of Counts I, II, III, IV, V, VI, XII and XIII. The (second) Answer filed by Hill Wallack LLP sets forth Cross-Claims on behalf of Owen and Donzella for Contribution and Indemnification from the other defendants.

## LEGAL ARGUMENT

## I.   NEW JERSEY SUBSTANTIVE LAW APPLIES TO THE CURRENT INSURANCE COVERAGE DISPUTE

Where, as here, the subject matter jurisdiction of the Federal court is grounded in the diversity of the citizenship of the parties, it is axiomatic that the substantive law of the forum state applies.  As the Third Circuit held:

> [a]s a federal court sitting in diversity, the district court was, and we are, obliged to apply state substantive law .... In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court.... In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule.  [McKenna v. Pacific Rail Service, 32 F.3d 820, 825 (3d Cir.1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) (other citations omitted).

Consequently, pursuant to the "Erie doctrine", the substantive law of New Jersey applies to the instant insurance coverage dispute.

## II.   QBE OWES A DUTY TO DEFEND AND INDEMNIFY GEORGE OWEN AND GEORGE DONZELLA IN THE UNDERLYING LITIGATION

Under long-settled New Jersey law, the "duty to defend" is a contractual obligation defined by the insurance policy.  Horesh v. State Farm Fire & Cas. Co., 265 N.J.Super. 32, 38 (App Div. 1993).  It is well-settled that an insurer's duty to defend is broader than the duty to indemnify and is triggered whenever the complaint states a claim, even if groundless and "almost sure to fail."  Sahli v Woodbine Board of Education, 193 N.J. 309, 322 (2008); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74 (1992).  Our Supreme Court made clear in Voorhees that the determination of whether an insurer owes a duty to defend is made by "comparing the allegations in the complaint with the language of the policy.  When the two correspond, the duty to defend arises, irrespective of the claim's actual merit."  Moreover, "[i]f the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor

of coverage." <u>Voorhees</u>, 128 <u>N.J.</u> at 173.  If the Complaint asserts both covered and non-covered claims, "the duty to defend will continue until every covered claim is eliminated." <u>Voorhees</u>, 128 <u>N.J.</u> at 174.

The Superior Court of New Jersey – Appellate Division summarized the duty to defend as follows:

> [T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against. And the duty is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact-in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.
>
> So in the resolution of the problem, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.

<u>L.C.S., Inc. v. Lexington Insurance Co.</u>, 371 <u>N.J.Super.</u> 482, 490-91 (App.Div. 2004), <u>citing</u> <u>Danek v. Hommer</u>, 28 <u>N.J.Super.</u> 68, 77 (App.Div. 1953).

In this case, some of the Counts (I through VI; XII and XIII) arise out of "bodily injury" allegedly suffered by Edena Amentler at and after the July 4 party at the Owen/Donzella home. The remainder of the Counts (VIII through XII; XIV and XV) involves the "Employment-Related claims" being prosecuted by Michael Perselay based upon his termination as an employee of the Fox & Hound.  Some of the claims accordingly fall within the scope of coverage afforded by QBE (the CGL carrier), while others fall within the purview of the coverage provided by EastGuard (the Workers Compensation/Employers Liability carrier).  The defendants/third-party plaintiffs Owen and Donzella are owed a duty to defend by **both** insurers.

**A.    George Owen and George Donzella Are Entitled to Coverage from QBE for Allegations Made Against Them in the Underlying Complaint.**

"Comparing the allegations in the complaint with the language of the policy", QBE owes a duty to defend Owen and Donzella against at least eight of the fifteen Counts of the Amended Complaint, including:

- Count I:       Assault and Battery

- Count II:      False Imprisonment

- Count III:     Assault and Battery with a Deadly Weapon

- Count IV:      Placing One in an Enhanced Risk of Developing HIV or AIDS

- Count V:       Intentional Infliction of Emotional Distress

- Count VI:      Negligent Infliction of Emotional Distress

- Count XII:     Dram Shop Act and Failure to Maintain a Safe Environment

- Count XIII:    Dram Shop Act and Serving Alcohol to Minors

**B.    Owen and Donzella Qualify as "insureds" on the QBE Policy.**

The threshold question in terms of coverage is whether Owen and Donzella qualify as "insureds." The Endorsement to the QBE Policy makes this question a simple one to answer. Both Owen and Donzella, and the specific July 4, 2007 event which is the subject of the current litigation, were expressly added to QBE's coverage. Policy Change No. 3 states as follows:

```
The Commercial General Liability Coverage Part has been amended as
follows:

The following Additional Insured-Designated Person or Organization has
been added with respects to the event on 7/4/07:

George Donzella & George Owen
22 Terrill Drive
Califon, NJ 07830
```

12

The insureds were charged and paid $150.00 in premium for this addition to coverage. Nevertheless, QBE has, to date, refused to properly assume its obligation to provide defense and indemnification to Owen and Donzella for their potential liabilities in the underlying action.

**C.    QBE is Obligated to Pay Damages for "Bodily Injury" and "Personal Injury."**

In terms of the coverage owed by QBE to Owen and Donzella, the Insuring Agreements of Coverages A and B of the QBE CGL Policy state as follows:

Coverage A

> a. We will pay those sums that the insured be-
> comes legally obligated to pay as damages
> because of "bodily injury" or "property dam-
> age" to which this insurance applies. We will
> have the right and duty to defend the insured
> against any "suit" seeking those damages.
> However, we will have no duty to defend the
> insured against any "suit" seeking damages for
> "bodily injury" or "property damage" to which
> this insurance does not apply. We may, at our
> discretion, investigate any "occurrence" and
> settle any claim or "suit" that may result. But:

Of relevance to the instant suit, the QBE Policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or
> disease sustained by a person, including death re-
> sulting from any of these at any time.

Coverage B

> a. We will pay those sums that the insured be-
> comes legally obligated to pay as damages
> because of "personal and advertising injury" to
> which this insurance applies. We will have the
> right and duty to defend the insured against
> any "suit" seeking those damages. However,
> we will have no duty to defend the insured
> against any "suit" seeking damages for "per-
> sonal and advertising injury" to which this in-
> surance does not apply. We may, at our dis-
> cretion, investigate any offense and settle any
> claim or "suit" that may result. But:

13

Germane to Count II of the Amended Complaint, the QBE Policy defines "personal and advertising injury" in part as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>   a. False arrest, detention or imprisonment;

Based upon the aforementioned grants of coverage, Owen and Donzella respectfully submit that QBE owes them coverage in this matter based upon the allegations set forth in Counts I through VI.

### D.    The "Intentional Acts" Exclusion of the QBE Policy Does Not Apply to the Claims Against Owen and Donzella.

In rejecting Owen and Donzella's tender of coverage on Counts I through VI of the Amended Complaint, QBE cited the "Intentional Acts Exclusion" of its Policy in its March 12, 2008 proposed Reservation of Rights Letter. The Exclusion states as follows:

> This insurance does not apply to:
>   a. Expected Or Intended Injury
>      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

However, the Exclusion does not apply to the causes of action against Owen and Donzella.[4]

Where, as here, an insurer cites the "Intentional Acts" Exclusion of its CGL Policy as a basis for disclaiming coverage, our courts have established the following rule of law for determining if the Exclusion is applicable:

---

[4]    The wording of the Amended Complaint is unclear regarding whether Counts I through IV are pled against all defendants, including Owen and Donzella, or just defendant Jeffrey Krol. To the extent plaintiffs are articulating these claims against Owen and Donzella, third-party plaintiffs respectfully submit they are entitled to a defense against these causes of action, which do not allege wrongdoing by either Owen or Donzella.

when a coverage exclusion is expressed in terms of bodily injury expected or intended by the insured, and where the intentional act does not have an inherent probability of causing the degree of injury actually inflicted, a factual inquiry into actual intent of the actor to cause the injury is necessary. [Prudential Property & Casualty Insurance Co. v. Karlinski, 251 N.J.Super. 457 (App.Div. 1991)].

The "Karlinski test" was further refined by the New Jersey Supreme Court in SL Industries, Inc.

v. American Motorists Insurance Co., 128 N.J. 188 (1992):

We believe the Karlinski test presents the most reasonable approach. It conforms to an insured's objectively-reasonable expectations and provides the victim with the greatest possibility of additional compensation consistent with the goal of deterring intentional wrongdoing. Assuming the wrongdoer subjectively intends or expects to cause some sort of injury, that intent will generally preclude coverage. If there is evidence that the extent of the injuries was improbable, however, then the court must inquire as to whether the insured subjectively intended or expected to cause that injury. Lacking that intent, the injury [is] "accidental" and coverage will be provided. [SL Industries, 128 N.J. at 212].

Thus, for an "Intentional Acts" Exclusion to be triggered, the carrier must show that the insured "subjectively intended" to cause injury. The New Jersey Supreme Court carved out an exception to this general rule in Voorhees, 128 N.J. at 184, where the court recognized that "particularly reprehensible" acts by the insured will objectively trigger the exclusion and obviate the need for an inquiry into the insured's "subjective intent". The "particularly reprehensible" test has been applied: where the insured was charged with stabbing another young man in the course of a fight between the two (Harleysville Ins. Companies v. Garitta, 170 N.J. 223 (2001)); where a sexual partner who failed to disclose his HIV status (F.S. v. L.D., 362 N.J.Super. 161 (App.Div. 2003)); for violations of the Domestic Violence Act (Bittner v. Harleysville Insurance Co., 338 N.J.Super. 447 (App.Div. 2001)); in sexual assault cases (J.C. ex rel. M.C. v. N.B., 335 N.J.Super. 503, 509 (App. Div. 2000) and Prudential Property Casualty Insurance Co. v. Boylan, 307 N.J.Super. 162 (App.Div. 1998)); in a spousal abuse case (Merrimack Mutual Fire Insurance Co. v. Coppola, 299 N.J.Super. 219 (App.Div. 1997)); and in a case involving the sexual molestation of children (Atlantic Employers Ins. Co. v. Tots & Toddlers Preschool Daycare

15

Center, Inc., 239 N.J.Super. 276 (App.Div.), certif. denied, 122 N.J. 147 (1990)).  In this case, there are no allegations of such wrongdoing against **Owen and Donzella**.[5]  Thus, QBE Insurance Company must show that third-party plaintiffs *subjectively intended* injury for the Intentional Acts Exclusion to apply.

The specific language set forth in the Exclusion is critical in this regard – the provision applies only to bar coverage for injuries expected or intended from the standpoint of "**the insured.**"  Notably, case law in both New Jersey and beyond supports a literal application of the policy's terms to confine the sweep of the Exclusion only to acts of the specific insured whose conduct is at issue – i.e., Jeffrey Krol.  On the other hand, where policies use the term "**any insured**" in an Exclusion, the provision will have broader effect.  See Villa v. Short, 195 N.J. 15 (2008).

In Villa, the Supreme Court of New Jersey held that the language of an Allstate Homeowners Policy, which precluded coverage for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of **an insured person** or which is in fact intended by **an insured person**", should be interpreted to preclude coverage for the "innocent" insured spouse.  Villa, 195 N.J. at 24 (emphasis added).  In construing this language, the court agreed with recent decisions by the Appellate Division holding that the term "an insured" is synonymous with the term "any insured".  Thus, an intentional act by any one insured under the Policy would serve to bar coverage for all insureds.  See also Argent v. Brady, 386 N.J.Super. 343 (App.Div. 2006); Allstate Ins. Co. v. Roelfs, 698 F.Supp. 815, 822 (D.Alaska 1987); Allstate Ins. Co. v. McCranie, 716 F.Supp. 1440, 1448 (S.D.Fla.1989), aff'd without

---

[5]  The allegations against co-defendant Krol cannot be imputed to the moving parties.

opinion sub nom., <u>Allstate Ins. Co. v. Manning</u>, 904 <u>F</u>.2d 713 (11th Cir.1990); <u>State Farm Fire & Cas. Co. v. Davis</u>, 612 <u>So</u>.2d 458, 466 (Ala.1993).

By contrast, in the current case it is readily apparent that the Intentional Acts Exclusion in the QBE CGL Policy does **not** apply to Owen or Donzella. As described above, Exclusions such as the one here, which speak to the conduct of "the insured," are construed narrowly to preclude coverage only for the specific insured whose acts are at issue. Here, there are no claims against either Owen or Donzella in Count I, II, III, IV or VI alleging that either in any way acted "intentionally". Thus, third-party plaintiffs are <u>not</u> denied coverage on these Counts by virtue of the Intentional Acts Exclusion contained within the QBE CGL Policy.

In terms of Count V of the Amended Complaint, which articulates a claim for "Intentional Infliction of Emotional Distress", the Intentional Acts Exclusion is similarly inapplicable. New Jersey case law is clear that "intentional infliction" claims may be proven by showing "conduct which is intentional **or** reckless." <u>Buckley v. Trenton Savings Fund Soc'y</u>, 111 <u>N.J.</u> 355, 366 (1988) (emphasis added). Although the cause of action is couched in the Amended Complaint as having been "intentional" on the part of Owen and Donzella, proofs may be developed to support a claim based upon "reckless" conduct. This precise conclusion regarding coverage for Intentional Infliction of Emotional Distress claims was recognized by the New Jersey Supreme Court in <u>Voorhees</u>. There, the court held that "the duty to defend also may have been triggered by the claim for intentional infliction of emotional distress, known as 'outrage' in New Jersey." <u>Voorhees</u>, 128 <u>N.J.</u> at 185. The <u>Voorhees</u> Court continued:

> [a]lthough "outrage is considered an intentional tort, it is recognized not only where conduct is intentional but also where it is "reckless". <u>Buckley</u>, <u>supra</u>, 111 <u>N.J.</u> at 366, 544 <u>A</u>.2d 857. A "reckless" act under tort law does not meet the subjective intent-to-injure requirement under insurance law. Thus, under both the "negligent infliction of emotional distress" and the "outrage" allegations,

Preferred Mutual had a duty to defend unless and until a subjective intent to injure had been demonstrated. [Voorhees, 128 N.J. at 185].

Here, there has been no showing (nor can there be) that Owen and/or Donzella acted with a "subjective intent to injure" Amentler or Perselay relating to the alleged rape by Krol of Amentler. Thus, QBE's duty to defend Count V, like Counts I through IV and VI, is triggered.

### E.  The "Employer's Liability" Exclusion Does Not Preclude Coverage for Counts XII and XIII.

QBE also owes coverage to Owen and Donzella on Counts XII and XIII of the Amended Complaint, which allege "Dram Shop" claims against the defendants. This coverage is afforded under the Liquor Liability Coverage Form of the CGL Policy, which provides:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages.

In its proposed Reservation of Rights Letter dated March 12, 2008, QBE **acknowledged** that it owed coverage to third-party plaintiffs for the "Dram Shop" claims asserted against them by Amentler. However, the carrier denied coverage as to any "Dram Shop" claims by Perselay, with the explanation that such coverage was precluded by the "Employer's Liability" Exclusion of the Liquor Liability Part, which provides:

c. **Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

As the unambiguous terms of the Exclusion make clear, the provision is intended to preclude CGL coverage for "claims – whether falling within or beyond the workers' compensation system – 'arising out of an in the course of … employment.'" <u>American Motorists Ins. Co. v. L-C-A Sales Co.</u>, 155 <u>N.J.</u> 29, 42-43 (1998). Here, there are no allegations in the Amended Complaint that Perselay was injured in the course of his employment as a result of third-party plaintiffs' service of alcoholic beverages. While Perselay was, in fact, an employee of the co-defendant Fox and Hound Restaurant as of July 4, 2007, there is no claim that he suffered any injuries in the course of that employment while at the party at the Owen/Donzella home. Rather, Perselay's claims – to the extent they are valid – arise out of his and Amentler's presence as guests at the party. Consequently, the "Employer's Liability" Exclusion does not apply. QBE owes coverage.

## III.  EASTGUARD HAS FAILED TO PROPERLY DISCHARGE ITS DUTY TO DEFEND GEORGE OWEN AND GEORGE DONZELLA

The coverage issues between third-party plaintiffs and EastGuard differ from those with QBE. Unlike QBE, EastGuard has acknowledged that it owes a duty to defend and indemnify its

insureds in this case. However, Owen and Donzella respectfully submit that the methodology utilized by EastGuard in extending this defense falls short in two critical respects.

In attempting to "meet" its duty to defend, EastGuard assigned counsel (George Karousatos, Esq.) to defend Owen and Donzella on seven of the Counts of the Amended Complaint and agreed to indemnify the third-party plaintiffs should a judgment be entered against them on a covered claim.[6] This decision is wrong for two reasons. First, our case law is clear that if the Complaint asserts both covered and non-covered claims, "the duty to defend will continue until every covered claim is eliminated." Voorhees, 128 N.J. at 174. Under this rationale, EastGuard should be defending its insureds against the entirety of the Amended Complaint, even if the duty to indemnify ultimately extends only to the "covered" claims.

Owen and Donzella raised this conflict issue with EastGuard in a March 10, 2008 letter challenging the carrier's coverage position. Third-party plaintiffs specifically cited Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 389-90 (1970), for the proposition that New Jersey case law is clear that where conflicts such as those between Owen and Donzella and EastGuard exist, it is appropriate for the insured to select its own counsel, separate from the insurer's appointed counsel.[7] In Burd, competing claims of negligence and intentional tort were posed against an

---

[6]    EastGuard has agreed to defend and indemnify Owen and Donzella on the following Counts:  Count VII, New Jersey Law Against Discrimination -- Sexually Hostile Work Environment; Count VIII, New Jersey Law Against Discrimination -- Quid Pro Quo Sexual Harassment; Count IX, New Jersey Law Against Discrimination -- Unlawful Retaliation; Count X, New Jersey Law Against Discrimination -- Aiding and Abetting Liability; and Count XI, New Jersey Law Against Discrimination -- Failure to Maintain a Safe Workplace; Count XIV, Title VII of the Civil Rights Act; and County XV, the Conscientious Employee Protection Act.

[7]    This basic principle of law has been codified in California, where the Judiciary and Legislature has mandated that the insured select its own attorneys (subject to an agreement as to reasonable counsel fees) where the carrier issues a Reservation of Rights letter.  See San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc., 162 Cal.App.3d 358, 364, 208 Cal.Rptr. 494 (1984); see also Cal. Civ. Code § 2860.

insured.  Analyzing whether the insurer (Sussex Mutual) owed its insured a duty to defend him

in the underlying action given these competing allegations by the plaintiff, our Supreme Court

ruled:

> Here the obligation to pay a judgment obtained by the injured party depended on
> whether the injuries were intentionally inflicted within the meaning of the
> exclusionary clause.  There may be cases in which the interests of the carrier and
> the insured coincide so that the carrier can defend such action with complete
> devotion to the insured's interest.  But if the trial will leave the question of
> coverage unresolved so that the insured may later be called upon to pay, or *if the
> case may be so defended by a carrier as to prejudice the insured thereafter upon
> the issue of coverage, **the carrier should not be permitted to control the defense.**
> That was the situation in the case at hand.  Although both the insurer and the
> insured would want D'Agostino to fail, yet if D'Agostino should succeed, as it
> was likely he would, the insured would want the basis to be negligence whereas
> the carrier would profit if the basis was an intentional injury within the policy
> exclusion.  If plaintiff pressed his claim of negligence, the coverage issue would
> remain open, for the carrier could hardly insist the injuries were intentionally
> inflicted.  Willfulness is not a defense to a charge of negligence.  And if plaintiff
> sought a judgment for intentional hurt, the carrier could not be expected to resist
> that basis of liability with the fervor or fidelity of an advocate selected by the
> insured.  [Burd, 56 N.J. at 389-90 (emphasis added)].

EastGuard has never responded to the impact of the Burd issue in this case.

The second conflict results from EastGuard's decision to defend Owen and Donzella,

while also defending co-defendants Tom Stiner, Jeffrey Krol (the active tortfeasor) and the

restaurant.  Quite obviously, as a result of EastGuard's apparent decision to cut costs by

consolidating the defense of all of its insureds, each of the individual defendants has been

deprived of the right and ability to assert Cross-Claims against the other insureds/defendants on

the Counts being defended by EastGuard's selected counsel.  Although Owen and Donzella do

not have any conflicts as between each other, the same is not true of these third-party plaintiffs

and the other defendants, who may be responsible for any verdicts returned against the

defendants on the "Employment-Related claims" set forth in the Amended Complaint.  Owen

and Donzella objected to this facially-obvious conflict by way of correspondence to EastGuard

dated February 25, 2008 and March 10, 2008.  In a similar fashion, the Clerk of this court raised the "conflict issue" in a "Quality Control" Message, which was placed on the Electronic Case Filing system on March 10, 2008.  The Clerk's Note specifically reads as follows:

> CLERK'S QUALITY CONTROL MESSAGE: This pertains to Document 15 ANSWER to Complaint with CROSSCLAIM filed n 3/9/08 by STUART S. BALL, ESQ. for 69 MAIN STREET, LLC.; Document 16 ANSWER to Amended Complaint filed on 3/10/08 by GEORGE KAROUSATOS, ESQ. for GEORGE A. DONZELLA, JEFFREY J. KROL, 69 MAIN STREET, LLC, GEORGE P. OWEN, and TOM J. STINER; and Document 17 ANSWER to Complaint with CROSSCLAIM filed on 3/10/08 by MAEVE CANNON, ESQ. for GEORGE A. DONZELLA and GEORGE P. OWEN. It appears because of the Crossclaims contained in Documents 15 & [17] that there may be some conflicts with the representation for the Defendants. For example, according to Document 16 , Mr. Karousatos represents all of the Defendants, and because there are Crossclaims - it appears some of his clients are suing some of his other clients. Counsel is requested to review these documents and resolve this issue accordingly. (ms) (Entered: 03/10/2008)

Notwithstanding the objections of both its insureds and the Clerk of this court, EastGuard Insurance Company once again reaffirmed its position that it does not perceive that a conflict of interest is created by its coverage position (Exhibit O).  The carrier has, to date, refused to modify its coverage position to recognize this readily apparent conflict.

Based upon the existence of the foregoing impermissible conflicts, Owen and Donzella respectfully submit that this court must declare that, consistent with what the carrier has already acknowledged, EastGuard owes them a duty to defend and indemnify against the "Employment-Related claims" set forth in Counts XII through XI and XIV to XV of the Amended Complaint. In order to avoid such conflicts going forward, this court must also order that the defense of Owen and Donzella be severed from that afforded by EastGuard to its other insureds, including Stiner, Krol and the restaurant.

IV.    **BASED UPON MULTIPLE CONFLICTS OF INTEREST, OWEN AND DONZELLA MUST BE PERMITTED TO SELECT THEIR OWN COUNSEL, WITH QBE INSURANCE COMPANY AND EASTGUARD INSURANCE COMPANY CONTRIBUTING TOWARDS THE COSTS OF THEIR DEFENSE**

The coverage obligations owed by QBE and EastGuard to Owen and Donzella trigger numerous conflicts running in multiple directions. In addition to the issues involving covered and non-covered claims, EastGuard has assigned the defense of multiple insureds to one attorney. Simply put, it is impossible to comprehend how one attorney retained by any carrier could faithfully serve the purposes of both the insureds and insurer.

As a result of the varying coverage positions taken by QBE and EastGuard and both carriers' refusal to properly assume the coverage obligations both carriers owe to Owen and Donzella, third-party plaintiffs have been required to retain counsel (Hill Wallack LLP) to represent them in defending against some of the Counts of the Underlying Complaint and to prosecute a third-party coverage action against both carriers. More specifically, Owen and Donzella are currently represented by Hill Wallack LLP on Counts I, II, III, IV, V, VI, XII and XIII. Counsel retained by EastGuard (George Karousatos, Esq.) has answered on Counts VII, VIII, IX, X, XI, XIV and XV. Additionally, in its Reservation of Rights Letter QBE proposed to retain additional counsel to defend Owen and Donzella against Amentler's claims on Counts XII and XIII. Thus, if the course for defending the case suggested by the carriers were to be followed, Owen and Donzella would be simultaneously represented by three different attorneys against the fifteen counts pled by two underlying plaintiffs in the Amended Complaint.

Simply put, this scenario does not serve the best interests of the insureds (Owen and Donzella) or this court. Rather, the proper procedure would be for defendants to be represented by one attorney. Owen and Donzella respectfully submit that Dunne v. Fireman's Fund, 69 N.J. 244 (1976) empowers this court to order: (1) that Hill Wallack LLP be appointed as their sole

23

attorneys in this case; and (2) that QBE and EastGuard contribute towards the costs of their defense. In this regard, Dunne holds as follows:

> Under the terms of the policy Fireman's Fund is under a duty to defend the suit against its insured since the allegations in the complaint include some subject matter, negligence, which clearly falls within the coverage. We envision possible conflicts in this defense because coverage may not exist if liability is fixed on some other predicate, such as violation of right of privacy. **Therefore, in the first instance the insured should select their own counsel, subject to the carriers approval. In the event such approval is not forthcoming the selection should be made by the assignment judge. Reasonable counsel fees and costs of defenses are to be paid by Fireman's Fund.** At the trial interrogatories should be submitted to the jury to ascertain the precise factual basis for any conclusion of liability so that the coverage issue may be resolved. If a jury trial is waived, then the trial court will make those finding. We are not passing upon what responsibility, if any, the State may have to bear the cost of the defense or satisfy any judgment that may be entered against the detectives. Neither the plaintiff detectives nor Fireman's Fund have sued the State, and no adjudication was made on the third party action of the County of Morris against the State. [Dunne, 69 N.J. at 252; emphasis added].

As this matter is pending in Federal court, there is, of course, no "Assignment Judge" to whom the current Motion may be made. As such, the instant application is being made to the District Court Judge to whom handling of this case has been assigned (the Hon. Freda L. Wolfson, U.S.D.J.). Regardless of this issue of "form over substance", the fact remains that sufficient conflicts exist which mandate that, consistent with Dunne, Owen and Donzella be permitted to select their own counsel to defend against the underlying action prosecuted by Amentler and Perselay. In the same vein and, QBE and EastGuard must be compelled to contribute to the "reasonable counsel fees and costs of defenses" incurred by third-party plaintiffs.

24

**V.    THIRD-PARTY PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF THE COUNSEL FEES EXPENDED BOTH IN THEIR DEFENSE IN THE UNDERLYING ACTION AND IN THE PROSECUTION OF THE DECLARATORY JUDGMENT ACTION.**

**A.    QBE and East Guard Must Reimburse Owen and Donzella For the Costs Incurred in Defending the Underlying Action.**

Under New Jersey law, once the insured tenders a demand for a defense to its insurer, the carrier must provide a defense if the allegations in a complaint assert claims against the insured that fall within the policy coverage, regardless of the "merits" of the claims. See Voorhees, 128 N.J. at 173; SL Industries 128 N.J. at 199. Owen and Donzella formally tendered demands for a defense to both QBE and EastGuard on January 29, 2008, just twelve days after the Complaint was initially filed. As previously discussed, the allegations advanced by the underlying plaintiffs certainly triggered a duty to provide coverage by both insurers to Owen and Donzella. Notwithstanding, neither carrier has properly assumed its defense obligation; prompting third-party plaintiffs to retain Hill Wallack LLP to defend them against eight of the fifteen Counts of the Amended Complaint and to prosecute a Declaratory Judgment action seeking the proper coverage from both insurers. Based upon third-party defendants' breach of their duties to defend, there can be no question that both QBE and EastGuard are obligated to reimburse defense costs incurred by Owen and Donzella since January 29, 2008.

**B.    Owen and Donzella Are Entitled to Reimbursement of the Attorneys' Fees and Costs Incurred in the Prosecution of the Declaratory Judgment Action.**

Where, as here, the jurisdiction of a federal court is predicated upon the diversity of citizenship of the parties, the courts which have considered the issue have uniformly held that "[s]tate rules concerning the award or denial of attorney's fees are to be applied." McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 n. 47 (3d Cir. 1990), citing Montgomery Ward & Co. v. Pacific Indemnity Company, 557 F.2d 51, 56 (3d Cir. 1977); see also Transamerica

Insurance Company v. Keown, 472 F.Supp. 306, 312 (D.N.J. 1979). Pursuant to this rule of law, third-party plaintiffs Owen and Donzella respectfully submit that this court should apply the germane provision of the New Jersey State Court Rules, R. 4:42-9(a)(6) to award them reimbursement of the attorneys fees and costs expended in prevailing upon this Declaratory Judgment action against QBE and EastGuard.   In Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Company, 316 F.3d 431 (3d Cir. 2003), the Third Circuit affirmed an Order of the Hon. Katherine S. Hayden, U.S.D.J. applying R. 4:42-9(a)(6) where an insured and its insurer sought the reimbursement of attorney's fees expended in the prosecution of a Declaratory Judgment action seeking coverage against another carrier.

N.J.Ct.R. 4:42-9(a)(6) provides that an award of counsel fees may be made "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." As noted by the New Jersey Supreme Court:

> [t]he policy underlying Rule 4:42-9(a)(6) is "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." (citation omitted). Although [the insurer] may not have been acting in bad faith when it refused to honor [the insureds'] demands, to deny [the insureds] their counsel fees would be to deny them the benefits of the insurance contract that they achieved as successful litigants. [Sears Mortgage Corp. v. Rose, 134 N.J. 326, 356 (1993); see also Molyneaux v. Molyneaux, 230 N.J. Super. 169, 181 (App. Div. 1989)].

New Jersey's courts have made clear that fees should not be denied even if: (1) the insurer asserts, and/or the court determines, that the insurer's denial of coverage was made in "good faith"; and/or (2) the issues raised under the insurance policy may be characterized as "novel." See Russell v. Rutgers Casualty Insurance Company, 234 N.J.Super. 175, 181-82 (App. Div. 1989). Indeed, in Russell, the court held:

> [t]he fact that the counsel fees awarded are almost as much as the amount in controversy is immaterial, as long as the trial judge found that the amount of time alleged by counsel to have been spent was indeed spent and the cost charged for

26

that time was reasonable.  Indeed, it would be self-defeating if plaintiff had to incur substantial legal fees to recover money to which she is entitled, without any possibility of being compensated for all or part of those fees.  [Russell, 234 N.J.Super. at 182].

This court has utilized N.J.Ct.R. 4:42-9(a)(6) to award attorneys fees to insureds which have prevailed upon claims for coverage.  Similar to the case at bar, in NL Industries v. Commercial Union Insurance Company, 727 F.Supp. 1154 (D. N.J. 1993), this court applied N.J.Ct.R. 4:42-9(a)(6) to determine that an insured (NL Industries) was entitled to the attorneys fees it incurred in seeking coverage under a CGL policy issued by its insurer (Commercial Union).  As in the instant matter, NL Industries was required both to prepare a motion for summary judgment seeking coverage under the CGL policy issued to it by its insurer and to spend monies preparing a defense to the insurer's cross-motion for summary judgment.  As then-Magistrate Judge Pisano cogently noted:

> The instant matter presents an example of exactly the type of behavior that R. 4:42-9(a)(6) is designed to deter.  CU had its day in court on the issue of its duty to defend; any further debate on this issue in this court is protracted litigation, notwithstanding CU's apparent good faith belief that there is merit to its refusal to defend the four new claims.  [NL Industries, 828 F.Supp. at 1167.]

Thus, Owen and Donzella are entitled to reimbursement of the attorneys' fees and costs incurred in the instant matter.

Although the New Jersey State Court Rules provide the substantive basis for such an award, the Federal Rules of Civil Procedure establish the process for making an application for reimbursement of attorneys' fees to this court.  Loc.R.Civ.Pro. 54.2 provides in relevant part that:

> In all actions in which a counsel fee is allowed by the Court or permitted by statute, an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court, setting forth the following:

27

(1)     the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;

(2)     a record of the dates of services rendered;

(3)     a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

(4)     the time spent in the rendering of each of such services; and

(5)     the normal billing rate of each of such services for the type of work performed.

The time spent by each individual performing services shall be totalled at the end of the affidavit.  Computerized time sheets, to the extent that they reflect the above, may be utilized and attached to any such affidavit showing the time units expended.  [Loc.R.Civ.Pro. 54.2(a)].

Consistent with this rule, third-party plaintiffs request an Order granting leave to file a Certification of Services in accordance with <u>Loc. R. Civ. Pro</u>. 54.2(a).

## CONCLUSION

For the foregoing reasons of fact and law, third-party plaintiffs George Owen and George Donzella respectfully submit that this court enter an Order declaring that:

1.     QBE Insurance Company owes them a duty to defend and indemnify against their potential liabilities on Counts I, II, III, IV, V, VI, XII and XIII of the Amended Complaint filed by Edena Amentler and Michael Perselay;

2.     EastGuard Insurance Company's consolidated defense of George Owen, George Donzella, Tom Stiner and the Fox & Hound Restaurant against Counts VII, VIII, IX, X, XI, XIV and XV of the Underlying Complaint is a "conflict";

3.     EastGuard Insurance Company owes a duty to defend and indemnify against their potential liabilities on Counts VII, VIII, IX, X, XI, XIV and XV of the Amended Complaint filed by Edena Amentler and Michael Perselay;

4.     Hill Wallack LLP be appointed as counsel to Owen and Donzella as to all Counts of the Amended Complaint filed by Edena Amentler and Michael Perselay, with QBE Insurance Company and EastGuard Insurance Company contributing to the costs of the defense going forward;

5.     QBE Insurance Company and EastGuard Insurance Company are obligated to reimburse them for the attorneys' fees and costs incurred by Hill Wallack LLP in the defense of the underlying action; and

6.     QBE Insurance Company and EastGuard Insurance Company are obligated to reimburse them for the attorneys' fees and costs incurred by Hill Wallack LLP in the prosecution of the third-party Declaratory Judgment Complaint.

7.     Counsel for the third party plaintiffs shall submit the Certification of Services in accordance with Loc. R. Civ. Pro. 54.2.

        Respectfully submitted,
        HILL WALLACK LLP
        Attorneys for Defendants/Third-Party
        Plaintiffs, George Owen and George
        Donzella


        */s/ Gerard H. Hanson*
        Gerard H. Hanson, Esq.

Dated: November 21, 2008