## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EDEMA AMENTLER and MICHAEL PERSELAY,

                 Plaintiffs,

v.

69 MAIN STREET LLC, d/b/a FOX AND HOUND TAVERN; GEORGE P. OWEN; TOM J. STINER; GEORGE A. DONZELLA; and JEFFERY J. KROL,

                 Defendants,

and

GEORGE P. OWEN and GEORGE A. DONZELLA;

                 Third-Party Plaintiffs,

QBE INSURANCE COMPANY and EASTGUARD INSURANCE COMPANY.

                 Third-Party Defendants

CIVIL ACTION NO. 3:08-CV-0351

---

BRIEF IN OPPOSITION TO THIRD-PARTY PLAINTIFFS, GEORGE P. OWEN AND GEORGE A. DONZELLA AND 69 MAIN STREET, LLC'S, MOTIONS FOR SUMMARY JUDGMENT AND IN SUPPORT OF THIRD-PARTY DEFENDANT, QBE INSURANCE COMPANY'S, CROSS-MOTION FOR SUMMARY JUDGMENT.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

RESPONSE TO THIRD-PARTY PLAINTIFF'S
STATEMENT OF UNCONTESTED MATERIAL FACTS ......................................................... 1

STATEMENT OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF THIRD-PARTY DEFENDANTS, QBE
INSURANCE COMPANY'S CROSS-MOTION FOR
SUMMARY JUDGMENT ............................................................................................ 4

PRELIMINARY STATEMENT ................................................................................... 11

THE UNDERLYING COMPLAINT ............................................................................ 13

LEGAL ARGUMENT .............................................................................................. 17

STANDARD FOR SUMMARY JUDGMENT ................................................................. 17

I. QBE INSURANCE COMPANY HAS NO DUTY TO
    DEFEND THIRD-PARTY PLAINTIFFS GEORGE A.
    DONZELLA AND GEORGE P. OWENS .................................................................. 19

    A. DUTY TO DEFEND GENERALLY ...................................................................... 19

    B. NO DUTY TO DEFEND UNCOVERED ALLEGATIONS ........................................... 20

    C. CONFLICT BETWEEN COVERED AND UNCOVERED CLAIMS ............................... 21

II. THERE IS NO COVERAGE UNDER THE QBE POLICY FOR
    THE ALLEGATIONS ASSERTED AGAINST GEORGE A.
    DONZELLA AND GEORGE P. OWEN IN THE AMENDED COMPLAINT ...................... 23

    A. THE ALLEGATIONS IN THE AMENDED COMPLAINT GO
        BEYOND THE SCOPE OF COVERAGE AS SAME ARE
        BEYOND THE LEGITIMATE SCOPE OF 69 MAIN
        STREET, LLC'S BUSINESS .......................................................................... 23

    B. TO THE EXTENT THE ALLEGATIONS ARE WITHIN THE
        SCOPE OF COVERAGE, THEY FALL WITHIN THE SPECIFIC
        EXCLUSIONS PROVIDED FOR BY THE POLICY ............................................... 30

III. THE INSURED BREACHED THEIR CONDITIONS ON NOTICE .................................. 36

i

IV.  69 MAIN STREET, LLC IS NOT ENTITLED TO RELIEF
     WITHOUT FILING A PLEADING.......................................................................38

CONCLUSION......................................................................................................................38

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
  421 U.S. 240 (1975) ...................................................................................29

*Allstate Insurance Co. v. Roelfs,*
  698 F. Supp. 815 (D.Alaska 1987) ............................................................32

*Allstate Insurance Co. v. Steele,*
  74 F.3d 878 (8th Cir. 1996) ........................................................................27

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...................................................................................17

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...................................................................................17

*Curley v. Klem,*
  298 F.3d 271 (3d Cir. 2002)(citations omitted) .........................................17

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................. 17-18

*Ridgewood Board of Ed. v. Stokley,*
  172 F.3d 238 (3d Cir. 1999) .......................................................................18

*SCI Liquidating Corp. v. Hartford Fire Insurance,*
  181 F.3d 1210 (11th Cir. 1999) ..................................................................27

## STATE CASES

*Burd v. Sussex Mutual Insurance Co.,*
  267 A.2d 7 (1970) .............................................11, 12, 13, 14, 15, 16, 21, 22

*Central Nat. Insurance Co. v. Utica Nat. Insurance Group,*
  557 A.2d 693 (App. Div. 1989) ..................................................................20

*City of Newark v. Hartford,*
  342 A.2d 513 (App. Div. 1975) ..................................................................29

*Cooper v. Government Employees Insurance Co.,*
  237 A.2d 870 (1968) ...................................................................................37

*Danek v. Hommer,*
  100 A.2d 198 (App. Div. 1953) ...................................................................19, 20

*F.S. v. L.D.,*
  827 A.2d 335 (App.Div. 2003) ...............................................................................33

*Fireman's Fund Insurance Co. v. Imbesi,*
  826 A.2d 735 (App. Div. 2003) ..............................................................................29

*Gazis v. Miller,*
  892 A.2d 1277 (2006) ..............................................................................................37

*Gerhardt v. Continental Insurance Cos.,*
  225 A.2d 328 (1966) ................................................................................................30

*Grand Cove II Condominium Association v. Ginsberg,*
  676 A.2d 1123 (App. Div. 1996) ............................................................................20

*Harleysville Insurance Cos. v. Garitta,*
  785 A.2d 913 (2001) .................................................................................. 25-26, 32

*Hartford Accident & Indemnity Co. v. Aetna Life & Casualty Insurance Co.,*
  483 A.2d 402 (1984) ................................................................................................21

*High Point Insurance Co. v. J.M.,*
  942 A.2d 804 (App.Div. 2008) ...............................................................................26

*Horesh v. State Farm Fire & Cas. Co.,*
  625 A.2d 541 (App. Div. 1993) ..............................................................................20

*J.C. ex. Rel. M.C. v. N.B.,*
  762 A.2d 1062 (App.Div. 2000) .............................................................................32

*Janovsky v. American Motorists Insurance Co.,*
  93 A.2d 1 (1952) ......................................................................................................30

*Johnson v. Johnson v. Aetna,*
  667 A.2d 1087 (App. Div. 1995) ............................................................................29

*L.C.S., Inc. v. Lexington Insurance Co.,* 853 A.2d 974 (App.Div. 2004),
  100 A.2d at 203 .......................................................................................................19

*Morales v. National Grange Mutual Insurance Co.,*
  423 A.2d 325 (Law Div. 1980) ...............................................................................37

*N.J. Manufacturers Insurance Co. v. Vizcaino,*
    902 A.2d 754 (App. Div. 2007) ............................................................21, 22

*Ohio Casualty Insurance Co. v. Flanagan,*
    210 A.2d 221 ..............................................................................................20

*Property Casualty Co. of MCA v. Conway,*
    687 A.2d 729 (1997) ..............................................................................25, 26

*Prudential Property Casualty Insurance Co. v. Boylan,*
    704 A.2d 597 (App.Div. 1998) ...............................................................32, 33

*Prudential Property & Casualty Insurance Co. v. Karlinski,*
    598 A.2d 918 (App.Div. 1991) ...................................................................31

*Rendine v. Pantzer,*
    661 A.2d 1202 (1994) .................................................................................29

*SL Industries, Inc. v. American Motorists Insurance Co.,*
    607 A.2d 1266 (1992) .................................................................................31

*Sears v. National Union,*
    772 N.E.2d 247 (Ill. App. Ct. 2002) ...........................................................27

*Variety Farms, Inc. v. N.J. Manufacturers,*
    410 A.2d 696 (App. Div. 1980) ...................................................................29

*Villa v. Short,*
    947 A.2d 1217 (2008) .................................................................................32

*Voorhees v. Preferred Mutual Insurance Co.,*
    607 A.2d 1255 (1992) ............................................................19, 20, 26, 31, 32

*Wickner v. American Reliance Insurance Co.,*
    642 A.2d 1046 (App. Div. 1994) .................................................................20

*Zacarias v. Allstate Insurance Co.,*
    775 A.2d 1262 (2001) .................................................................................26

## FEDERAL STATUTES

*Fed. R. Civ. P.* 56(e) ...........................................................................................17

## STATE STATUTES

<u>N.J.S.A.</u> § 2A:22A-1 ................................................................................15, 16

<u>N.J.S.A.</u> § 10:5-27.1.................................................................................................30

<u>N.J.S.A.</u> 34:19-1.......................................................................................................6

## RESPONSE TO THIRD-PARTY PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS

1.    Agreed.

2.    Agreed.

3.    Third-Party Defendant, QBE Insurance Company ("QBE") does not possess sufficient information to either agree or disagree with this statement and Third-Party Plaintiffs have failed to adequately support their contention so as to provide a proper basis on which QBE could agree or disagree.

4.    Agreed.

5.    Agreed.

6.    Agreed.

7.    Agreed.

8.    Agreed.

9.    Agreed.

10.   Agreed.

11.   Agreed.

12.   Agreed.

13.   Agreed.

14.   Agreed.

15.   Agreed.

16.   Agreed that Specialty Insurance Agency received a copy of the Amended Complaint in the underlying matter.  Disagreed that the Amended Complaint it received was a filed copy. (Exhibit A).

17.   Agreed.

18.    Agreed.

19.    Agreed that QBE issued a Reservation of Rights letter dated March 12, 2008. Disagreed that such letter acknowledged any duty to defend Third-Party Defendants, rather, the letter stated that "QBE would be **willing** to provide a defense for the allegations in Counts XII and XIII relating to Dram Shop violations for plaintiff Amentler's claims only."   QBE's willingness to provide such a defense would be afforded only to 69 Main Street, LLC, George A. Donzella, George P. Owen and Thomas J. Stiner. (Exhibit B).

20.    Agreed.

21.    Agreed.

22.    Agreed.

23.    Agreed.

24.    QBE does not have a sufficient basis on which to agree or disagree with this statement and the document cited by Third-Party Plaintiffs does not support the facts set forth in this statement.

25.    QBE does not possess sufficient information to either agree or disagree with this statement and Third-Party Plaintiffs have failed to adequately support their contention so as to provide a proper basis on which QBE could agree or disagree.

26.    Agreed.

27.    Agreed.

28.    QBE does not possess sufficient information to either agree or disagree with this statement and Third-Party Plaintiffs have failed to adequately support their contention so as to give a proper basis on which QBE could agree or disagree.

29.    Agreed.

30.    Agreed.

31.    Agreed.

32.    Agreed.

33.    Agreed.

34.    QBE does not possess sufficient information to either agree or disagree with this statement and Third-Party Plaintiffs have failed to adequately support their contention so as to provide a proper basis on which QBE could agree or disagree.

35.    Agreed that a Motion to Strike Defendant's Answer was filed on March 26, 2008.

36.    Agreed.

37.    Disagreed that Third-Party Plaintiffs seek to have the court appoint one law firm to defend them. Rather they seek to the right to select counsel of their choice to defend them against the underlying action. (Exhibit C p. 24 ¶ 37 & 39).

38.    Agreed.

39.    Agreed.

40.    Agreed.

41.    Agreed.

42.    QBE does not possess sufficient information to either agree or disagree with this statement and Third-Party Plaintiffs have failed to adequately support their contention so as to give a proper basis on which QBE could agree or disagree.

**STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF THIRD-PARTY DEFENDANT, QBE INSURANCE COMPANY'S, CROSS-MOTION FOR SUMMARY JUDGEMENT**

1.  QBE hereby incorporates into its Statement of Uncontested Material Facts all those facts which were agreed to in its response to Third-Party Plaintiffs' Statement of Uncontested Material Facts.

2.  69 Main Street, LLC d/b/a Fox and Hound Tavern ("Fox & Hound") is a commercial restaurant located at 69 Main Street, Lebanon, NJ 08833. George P. Owen ("Owen"), George A. Donzella ("Donzella"), Tom J. Stiner ("Stiner") and Jeffery Krol ("Krol") (collectively the "Owner Defendants") are all owner-operators of the Fox and Hound. (Exhibit D ¶ 5 – 9).

3.  On July 4, 2007, the Fox & Hound held a business function at the home of Owen & Donzella. Over 200 guests attended the function, the purpose of which was to market Fox & Hound. (Exhibit D ¶ 12-13).

4.  Michael Perselay ("Perselay") worked as a chef at the function and attended the function as an employee of Fox & Hound.  Edena Amentler ("Amentler") attended the function with Perselay for the purpose of assisting Perselay in entertaining the guests of Fox & Hound. (Exhibit D ¶ 14-15).

5.  As a result of the events of July 4, 2007, a complaint was filed against Fox & Hound and the Owner Defendants by Perselay and Amentler. (Exhibit D).

6.  The Complaint alleges that while leaving a restroom during the event Amentler was confronted by Krol who instructed Amentler to follow him. Krol then lead Amentler into an empty bedroom and proceeded to lock the door behind them. (Exhibit D ¶ 24 – 26).

7.    The Complaint further alleges that, over the objections of Amentler, Krol removed her clothing, pushed her onto the bed, and proceeded to forcibly rape Amentler. (<u>Exhibit D</u> ¶ 27 – 32).

8.    The Amended Complaint sets forth various causes of action against the various Defendants. Those causes of action are:

- Count I      Assault and Battery
- Count II     False Imprisonment
- Count III    Assault and Battery with a Deadly Weapon
- Count IV    Placing One in An Enhanced Risk of Developing HIV or Aids
- Count V     Intentional Infliction of Emotional Distress
- Count VI            Negligent Infliction of Emotional Distress
- Count VII           New Jersey Law Against Discrimination – Sexually Hostile Work              Environment.
- Count VIII New Jersey Law Against Discrimination – Quid Pro Quo Sexual              Harassment
- Count IX      New Jersey Law Against Discrimination – Unlawful Retaliation
- Count X       New Jersey Law Against Discrimination – Aiding and Abetting Liability
- Count XI      New Jersey Law Against Discrimination – Failure to Maintain a Safe Workplace
- Count XII     Dram Shop Act – Failure to Maintain a Safe Workplace
- Count XIII    Dram Shop Act and Serving Alcohol to Minors
- Count XIV    Title III of the Civil Rights Act of 1964, 42 U.S.C. § 200e, et seq. § 704(a)

- Count XV    Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. (Exhibit D).

9.    First notice by Fox & Hound of the alleged occurrence to QBE was given on January 29, 2008. (Exhibit E)

10.    Defendants, Owen and Donzella, filed a Third Party Complaint against QBE and EastGuard Insurance Company seeking a declaratory judgment that each owes a duty to defend Owen and Donzella from the allegations in Perselay and Amentler's Amended Complaint. (Exhibit C).

11.    On November 21, 2008 Defendants, Owen and Donzella, filed a Motion for Summary Judgment on the Third Party Complaint.  (Exhibit F)

12.    Thereafter, 69 Main Street, LLC filed a letter with the Court seeking to join Owen and Donzella in their motion and requesting identical relief. (Exhibit G).

13.    69 Main Street, LLC has not filed a Complaint against QBE Insurance Company.

14.    In addition to the provision set forth in paragraph nine of Third-Party Plaintiffs' Statement of Uncontested Material Facts, the Insuring Agreement of Coverage A of the Commercial General Liability Part of the QBE policy states:

> b.    This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1)   The "bodily injury" or "property damage" is caused by an "occurrence" . . .

(Exhibit H)

15.    "Occurrence" is defined  by the Commercial General Liability Policy as:

> 13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Exhibit H)

16.     In addition to the provision set forth in paragraph eleven of Third-Party Plaintiffs'

Statement of Uncontested Material Facts The Insuring Agreement of Coverage B of

the Commercial General Liability Part of the QBE policy states:

> b.    This insurance applies to "personal and advertising
> injury" caused by an offense arising out of your business. . .

(Exhibit H)

17.     Section II – Who Is An Insured of the Commercial General Liability Policy states:

> 1.  If you are designated in the Declarations as:

>> a.  An Individual, you and your spouse are insureds,
>> but only with respect to the conduct of a business of
>> which you are the sole owner.

>> c.  A limited liability company, you are an insured.
>> Your members are also insureds, but only with
>> respect to the conduct of your business.

(Exhibit H)

18.     The Exclusions section of Coverage A of the Commercial General Liability Part of

the QBE policy states:  This insurance does not apply to:

> **a.  Expected or Intended Injury**
> "bodily injury" or "property damage" expected or intended
> from the standpoint of the insured.   (See Exhibit H at
> Section I Coverage A (2)(a)).

> **e.  Employer's Liability**
> "Bodily Injury" to:

>> **(1)**     an "employee" of the insured arising out of
>> and in the course of:
>> **a.**  Employment by the insured; or

>> **b.**  Performing duties related to the conduct
>> of the insured's business; or

>> **(2)**     the spouse. . . of that "employee" as a
>> consequence of Paragraph (1) above.

This exclusion applies:

**(1)**    whether the insured may be liable as an employer or in any other capacity; and

**(2)**    any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Exhibit H)

19.    The Exclusions Section of Coverage B of the Commercial General Liability Part of the QBE policy states:  This insurance does not apply to:

> **a. Knowing violation of rights of another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury.
>
> **d. Criminal Acts**
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured."

(Exhibit H)

20.    The Employment-Related Practices Exclusion Endorsement, number CG 21 47 07 98, adds the following exclusions to Coverage A of the QBE Policy

> "This insurance does not apply to:
> "Bodily injury" to:
>> **(1)**   A person arising out of any:
>>> **(a)**      Refusal to employ that person;
>>> **(b)**      Termination of that person's employment; or
>>> **(c)**      Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

**(1)**    Whether the insured may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury."

(Exhibit H)

21.    The Employment-Related Practices Exclusion Endorsement, number CG 21 47 07 98, adds the following exclusions to Coverage B of the QBE Policy

"This insurance does not apply to:

"Personal and advertising injury" to:

**(1)**    A person arising out of any:

**(a)**    Refusal to employ that person;

**(b)**    Termination of that person's employment; or

**(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related

practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

**(1)**    Whether the insured may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury."

(Exhibit H)

## PRELIMINARY STATEMENT

The underlying Complaint in this matter seeks relief, through fifteen (15) separate counts, for damages resulting from the sexual assault of Plaintiff Amentler by Defendant Krol, during an event at the Home of Third-Party Plaintiffs, Owen and Donzella ("Third-Party Plaintiffs") which was held to promote the Fox & Hound. With the exception of the sixth Count the claims against Owen and Donzella are based on their knowing and intentional assistance in the Amentler assault and the improper employment action against Amentler's boyfriend and co-plaintiff Perselay.

As to Third-Party Plaintiffs Owen and Donzella, the first four counts do not assert a claim against them. Therefore, QBE has no duty to defend against claims which do not exist. Counts V and VII through XV are premised on allegations that the harm caused by Owen and Donzella was done knowingly and intentionally. Therefore, coverage and the consequential duty to defend are excluded for these counts as the product of intended acts of the insureds.

While Count VI claims intentional infliction of emotional distress, Count V claims the same actions as to Owen and Donzella were intentional.  Since Plaintiffs can prevail on only one of those Counts a conflict exists between Count V (negligence) and Count VI (intentional). Since QBE clearly has no duty to defend the intentional count, and resolution of the underlying claim is required to resolve the conflict, no duty to defend is required. Burd v. Sussex Mut. Ins. Co., 267 A.2d 7 (1970).  The extent of any duty QBE may have to reimburse must await the resolution of the underlying matter.

Furthermore, all claims premised upon the knowing and intentional acts of Owen and Donzella or any other member of the insured, 69 Main Street, LLC, are not covered because they do not constitute an "occurrence" as defined in the policy to arise from an accident.

Moreover, Perseley's claims emanate from his status as an employee and are excluded under the policy because they relate to Owen and Donzella's employment practices.

As to the non-physical damages sought by Plaintiffs, including punitive damages and attorneys fees, these are excluded under the policies and QBE has no duty to defend those claims. Moreover, Plaintiff's punitive damages claims are excluded from coverage by public policy.

Consequently, no duty to defend is triggered and to the extent there are any covered claims under Counts VI, XII and XIII, Burd requires that the clear and uncontroverted conflict presented by the pleadings prohibits a duty to defend and requires resolution before a duty of reimbursement can be determined.

Moreover, Third-Party Plaintiffs' motion is premature as the likelihood of appreciable prejudice consequential to their late notice cannot be resolved absent discovery. The potential loss of forensic evidence, identification of key witnesses and preservation of recollections critical to a successful defense was necessarily adversely impacted by the six month delay in notice to QBE. To what extent this adverse impact constituted appreciable prejudice cannot be resolved at this time. Conversely, no question of fact exists that notice here was late and the court can make that determination by way of partial summary judgment in favor of QBE with final determination of the impact of that late notice to await discovery and resolution of appreciable prejudice.

Based on the foregoing reasons, Third-Party Plaintiffs' Motion for Summary Judgment should be denied and Summary Judgment in favor of QBE should be granted dismissing the Complaint without prejudice.

Finally, 69 Main Street LLC has attempted to join Third-Party Plaintiffs' Motion for Summary Judgment. However, 69 Main Street, LLC has not filed a Third-Party Complaint

against QBE or EastGuard. In the absence of such a formal Complaint 69 Main Street, LLC is not entitled to the relief it now seeks.

## THE UNDERLYING COMPLAINT

Plaintiffs, Amentler and Perselay (the "Plaintiffs"), filed an Amended Complaint on or about February 2, 2008 which named the Fox and Hound and each of the Owner Defendants individually as defendants. (Exhibit D). The Amended Complaint includes fifteen (15) separate Counts asserting various causes of action against the various defendants. Id.  While several Counts are asserted against all the defendants, some counts assert claims only against Defendant Krol. Id.

The fifteen counts asserted in the Plaintiffs' Amended Complaint can be separated into several categories; Counts in which liability is asserted against Defendant Krol only for intentional conduct (Counts I through IV); Counts in which liability is based upon negligent conduct (Count VI); and Counts in which liability is based on knowing or intentional violations of the law (Counts V and VII through XV).

In Count I Plaintiff Amentler alleges that Defendant Krol intended to and did cause offensive physical contact with Amentler which constituted Assault and Battery. Id. ¶ 46-50. The Count contends, as a result of the Assault and Battery, Amentler suffered damages in the form of physical and bodily injuries, emotional distress, humiliation, embarrassment, anguish, personal hardship, career disruption, social disruption, psychological and emotional harm, economic loss and other damages. Id.

In Count II, Plaintiffs Amentler and Perselay allege Defendant Krol locked the bedroom door with the intent of placing Amentler in fear for her safety and the safety of Perselay's job if she did not submit to Krol. Id. ¶ 51-55.  The Count contends that such action on the part of Krol

constituted False Imprisonment. Id. Both Plaintiffs claim the same damages as claimed by Amentler in Count I. Id.

Count III alleges Assault and Battery with a Deadly Weapon. Id. ¶ 56-60. This count is based upon an allegation that in raping Amentler, Krol intentionally exposed her to his bodily fluids thereby intentionally committing an assault and battery upon Amentler. Id. Since Krol's lifestyle placed him at greater risk of contracting AIDS or HIV, Plaintiffs claim those fluids constituted a deadly weapon. Id. Both Plaintiffs claim the same damages as Amentler claimed in Count I. Id.

Count IV claims that in raping Amentler, Krol placed both Plaintiffs at enhanced risk of contracting HIV or AIDS. Id. ¶ 61-63. Plaintiffs allege Krol did not wear a condom when he assaulted Amentler and that because of his sexual orientation he is at a higher risk of contacting sexually transmitted diseases, including HIV and AIDS. Id. The damages claimed here as a consequence of Krol's intentional act are that both plaintiffs have been placed in fear of Amentler contracting such a disease, and that they suffered unspecified damages which include the costs for medical monitoring. Id.

Count V alleges that all Defendants intentionally inflicted emotional distress upon both Plaintiffs. The actions are not specified, only the factual descriptions of the events are incorporated by reference. Id. The damages claimed here by both Plaintiffs are the same as those claimed in the Count I by Amentler. Id.

Count VI alleges all Defendants negligently inflicted emotion distress upon both Plaintiffs. Id. ¶ 69-73. The count alleges without specificity that the acts alleged in the Amended Complaint to have been committed by all Defendants constituted "extreme and outrageous misconduct which exceeded all bounds of decency" causing Plaintiffs severe emotional distress.

Id. Plaintiffs claim they both suffered the same damages as those set forth in Count I for Amentler. Id.

Counts VII through X allege violations of the New Jersey Law Against Discrimination. Id. ¶ 69-98. In Count VII, Plaintiffs claim that the events of July 4, 2007 and Perselay's "mandatory vacation" created a sexually hostile work environment. Id. ¶ 69-81. Count VIII alleges the same events noted in Count VII, as well as pressure in the form of oral and physical abuse by all defendants of Plaintiffs to provide sexual favors as a condition of Perselay's employment, constituted quid pro quo sexual harassment. Id. ¶ 82-88. Count IX alleges that Perselay's forced "mandatory vacation" was a form of unlawful retaliation. Id. ¶ 89-94. Count X alleges that all defendants "condoned, ratified and aided and abetted the tortuous acts" committed by Krol against both Plaintiffs, and that such acts constitute aiding and abetting sexual assault and harassment. Id. ¶ 95-98. In each of these Counts it is alleged that the actions alleged are in violation of the New Jersey Law Against Discrimination. Id. ¶ 69-98. For each of these Counts Plaintiffs allege the same damages as those set forth in Count I. Id. ¶ 69-98.

Count XI alleges that all Defendants failed to maintain a safe workplace in that they knew, or should have known, of the danger of serving alcohol to minors; of the risk of sexual assault; and that they encouraged, assisted or tolerated acts that were in violation of statutory or common law. Id. ¶ 99-100. The Count does not identify any minors who were served alcohol nor does it make any connection between such acts and the sexual assault. Id. The count does not specify what damages are being alleged. Id.

Counts XII and XIII alleges violations of New Jersey's Dram Shop Act, N.J.S.A. § 2A:22A-1. Id. ¶ 101-104. Count XII alleges all Defendants failed to maintain a safe environment at both the Fox & Hound and at the site of the July 4, 2007 business event, in that

all Defendants knew, or should have known, of the danger of serving alcohol to business invitees and the risk of sexual assault under the circumstances. Id. ¶ 102. Count XIII, without identifying any minors who were served alcohol, alleges all Defendants violated the Dram Shop Act in that they should have known of the danger of serving alcohol to minors and the risk of sexual assault. Id. ¶ 104. Neither Count alleges a connection between the service of alcohol and the sexual assault, nor does either count state what damages are alleged to have been incurred by the Plaintiffs. Id. ¶ 101-104.

Finally, Counts XIV and XV both allege that the Defendants' termination of Perselay's employment with the Fox & Hound was in retaliation to the filing of Plaintiffs' Complaint. Id. ¶ 105-110. Count XIV alleges that such retaliation is in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, et seq. Id. ¶ 106. Count XV alleges that such retaliation is in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1, et seq. Id. ¶ 109. As to both Counts, Plaintiffs claim they each suffered the same damages as those set forth in Count I for Amentler. Id.

# LEGAL ARGUEMENT

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A Dispute over a fact which is irrelevant or unnecessary will not preclude a grant of summary judgment. Id. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002)(citations omitted).

It is the party moving for summary judgment that bears the burden of establishing that no "genuine issue" of fact exits. Celotex, 477 U.S. at 330. Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

To prove such a genuine issue exists, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. The non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).

Applying this standard, summary judgment in favor of QBE is warranted at this time. No issues of material fact exist which prevent the court from granting summary judgment. A review of the terms of the insurance policy and the allegations in the Complaint clearly demonstrate that the allegations do not fall within the scope of the coverage provided by the policy. The allegations in the Complaint are clearly not covered under the plain unambiguous language of the policy, and are excluded under various specific exclusions. Accordingly, QBE is entitled to summary judgment at this time declaring that it owes no duty to defend Third-Party Plaintiffs in the underlying litigation.

I.   **QBE INSURANCE COMPANY HAS NO DUTY TO DEFEND THIRD-PARTY PLAINTIFFS GEORGE A. DONZELLA AND GOERGE P. OWEN.**

**A. DUTY TO DEFEND GENERALLY**

Under New Jersey law, the duty to defend is a contractual obligation defined strictly by the terms of the insurance contract. The insurer has a duty to defend the insured "when the complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1259 (1992). It is the language of the policy which defines the scope of the duty to defend. Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. Danek v. Hommer, 100 A.2d 198, 202-203 (App. Div. 1953).

The duty to defend has been summarized as follows,

> the duty to defend comes into being when the complaint states a claim constituting a risk insured against. And the duty is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact - in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.
>
> So in the resolution of the problem, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.

L.C.S., Inc. v. Lexington Ins. Co., 853 A.2d 974, 979 (App.Div. 2004), citing Danek, 100 A.2d at 203.

Therefore, when determining whether a duty to defend exists, the allegations of the complaint, rather than the actual facts, trigger the duty to defend. The duty exists, when the Complaint or a count therein alleges facts that if proven would fall within coverage. Voorhees,

607 A.2d at 1259; <u>Danek</u>, 100 A.2d at 203; and <u>Ohio Cas. Ins. Co. v. Flanagan</u>, 210 A.2d 221.

225 (1965). An insurance carrier normally assumes the duty to defend all claims insured against,

whether groundless, false or fraudulent. <u>Central Nat. Ins. Co. v. Utica Nat. Ins. Group</u>, 557 A.2d

693, 694 (App. Div. 1989).

### B. NO DUTY TO DEFEND UNCOVERED ALLEGATIONS

Conversely, there is no duty to defend if the claim is beyond the scope of the insuring

agreement or precluded by a policy exclusion. <u>Central National Ins. Co</u>, 557 A.2d 693; <u>Wickner</u>

<u>v. American Reliance Ins. Co.</u>, 642 A.2d 1046 (App. Div. 1994), aff'd 661 A.2d 1256 (1995) and

<u>Horesh v. State Farm Fire and Cas. Co.</u>, 625 A.2d 541 (App. Div. 1993). When an excluded

claim is made against the insured, the insurer has no duty to defend. <u>Id.</u>

Where, as here, there is a multi-count Complaint, the duty to defend extends only to

counts containing covered claims (<u>Grand Cove II Condominium Ass'n v. Ginsberg</u>, 676 A.2d

1123, 1131 (App. Div. 1996)) and counts which allege facts that if proven would fall within

coverage. <u>Vorhees</u>, 607 A.2d at 1259, <u>Danek</u>, 100 A.2d at 203, and <u>Flanagan</u>, 210 A.2d at 225.

"If an excluded claim is made, the insurer has no duty to undertake the expense and effort to

defeat it, however frivolous it may appear to be." <u>Horesh</u>, 625 A.2d at 544.

A comparison of the plain language of the insurance policy with the facts set forth in the

Amended Complaint clearly demonstrates that QBE has no duty to defend the Third-Party

Plaintiffs. As to the counts pertaining to Third-Party Plaintiffs, the Amended Complaint alleges

knowing and intentional acts which fall beyond the scope of coverage under the QBE policy.

While Count VI alleges negligence it mirrors the intentional Count V and presents a conflict that

cannot be resolved before determination of the underlying claims. Therefore, no duty to defend

exists.

## C.  CONFLICT BETWEEN COVERED AND UNCOVERED CLAIMS

Generally, New Jersey courts adhere to the fundamental principle of insurance law that the duty to defend is determined by a comparison of the allegations as set forth in the underlying complaint with the policy language. *See* Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402, 405 (1984).  However, the New Jersey Supreme Court has articulated an exception to this general rule. *See* Burd v. Sussex Mut. Ins. Co., 267 A.2d 7 (1970). Essentially, Burd provides that where the facts necessary to resolve the coverage dispute require a determination of the underlying action the insurer and its attorneys are in conflict of interest. This situation requires suspension of the duty to defend until the underlying facts necessary to determine coverage are established. Id. at 10-11.

In Burd, like here, the underlying complaint alleged claims based on intentional acts, for which there was no possibility of coverage in addition to negligence. Id. at 9.  The insured requested a defense from its carrier, but the carrier declined based on the grounds that the policy expressly excluded damage caused by the intentional acts of the insured. Id. The Supreme Court held that where a conflict of interest exists and the coverage issues can not be determined before the conclusion of the underlying action, the insurer may decline to defend and the duty becomes one to reimburse.

The Burd decision was recently cited by the New Jersey Appellate Division in N.J. Mfrs. Ins. Co. v. Vizcaino, 902 A.2d 754 (App. Div. 2007).  In Vizcaino, the complaint against the insured alleged, in separate counts, that he both negligently and intentionally assaulted the plaintiff. Id. at 754.  The Vizcaino court was confronted with whether the inclusion of a claim of negligence in the complaint obligates the insurer to provide a defense to the insured when a complaint alleges intentional acts excluded from coverage under the terms of an insurance

policy. Id. at 755.  The court concluded that Burd was the controlling authority and that under it, the insurer was entitled to refuse to provide the insured with a defense unless coverage was capable of a determination in a declaratory judgment in advance of trial. Id. at 757.

The Vizcaino court recognized that:

> [t]here may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such action with complete devotion to the insured's interest. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense.

Id. at 756

The Court further agreed with the determination in Burd that:

> In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. On the contrary the carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of course the insured expressly agrees to that reservation.

Id.

Here, Third-Party Plaintiffs rejected QBE's reservation of its intent to dispute coverage. Further, there is no dispute that, like in Burd and Vizcaino, the complaint alleges intentional acts for which there is no coverage, and thus presents a conflict. For example, Counts V and VI are identical except that Count V alleges the acts were intentional, while Count VI claims they were negligent. (Exhibit D ¶ 64-73)   While both the alleged insureds and QBE have an interest in defeating Plaintiffs' claims and minimizing any damages, to the extent there are any damages, QBE's interest is in connecting them to uncovered claims.  It cannot be disputed that QBE's interest conflicts with Third-Party Plaintiffs in that regard.  This situation mandates that the duty to defend against Count VI becomes a duty to reimburse, only if it is ultimately established that

the cause of the Plaintiffs' injuries and the damages themselves come within the scope of coverage.

**II.**  **THERE IS NO COVERAGE UNDER THE QBE POLICY FOR THE ALLEGATIONS ASSERTED AGAINST GEORGE A. DONZELLA AND GEORGE P. OWEN IN THE AMENDED COMPLAINT.**

    **A. THE ALLEGATIONS IN THE AMENDED COMPLAINT GO BEYOND THE SCOPE OF COVERAGE AS SAME ARE BEYOND THE LEGITIMATE SCOPE OF 69 MAIN STREET, LLC'S BUSINESS.**

The scope of coverage provided to Third-Party Plaintiffs is defined by the terms of the QBE policy. The Commercial General Liability Coverage Part of the policy provides for two types of coverage:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,**
**1. Insuring Agreement**

        **a.**  [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [QBE] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [QBE] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . .

        **b.**  This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "covered territory"; . . ."

(Exhibit H at I – Coverage A (1)(a) &(b)).

**"COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
    **1.  Insuring Agreement**

        **a.**  [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . .

      **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business. . ."

(<u>Exhibit H</u> at I – Coverage B (1)(a) & (b)).

The Liquor Liability Coverage Part of the QBE Policy provides additional coverage:

**SECTION I– LIQUOR LIABILITY COVERAGE 1. Insuring Agreement**

      **a.** [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. [QBE] will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. . ."

(<u>Exhibit I</u> at I (1)(a)).

      **a.** <u>**The Allegations in the Amended Complaint Are Outside The Coverage Condition of the Legitimate Business of the Insured.**</u>

To be entitled to coverage under the QBE policy the individual seeking coverage must qualify as "an insured." Section II of the policy which defines who is an insured states:

      **1.** If you are designated in the Declarations as:

          **a.** an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

          **c.** A limited liability company, you are an insured. Your members are also insureds but only with respect to the conduct of your business.

(<u>Exhibit H</u> at II (1)(a) & (c)).

Therefore, Fox & Hound and its members are qualified as insureds, but only with respect to the conduct of Fox & Hound's business. The allegations contained in Counts I through V, VII-X and XIV-XV are inconsistent with the conduct of Fox & Hound's business and therefore

disqualify Third-Party Plaintiffs as insureds under the policy.  These counts allege intentional violations of plaintiffs' rights and the law which are beyond the scope of the Fox & Hound's legitimate business function.  (Exhibit D ¶ 51-68, 74-98, & 105-110).

Furthermore, Count VI alleges all Defendants committed knowing acts constituting "extreme and outrageous misconduct [exceeding] all bounds of decency." (Id. ¶ 71).  These alleged acts of extreme and outrageous misconduct are also inconsistent with any legitimate business conduct of the Fox & Hound.

Similarly, Counts XI through XIII include allegations of knowing violations of the law relating to the service of alcohol and the sexual assault. (Id. ¶ 99-104).  Such knowing violations of the law and intentional misconduct leading to the rape further disqualify Third-Party Plaintiffs as insureds under the QBE Policy as those knowing violations are not related to the conduct of Fox & Hound's business.

Because the Amended Complaint alleges behavior clearly beyond the legitimate business interests of Fox & Hound, Third-Party Plaintiffs do not qualify as insureds under the terms of the QBE Policy and consequently are not entitled to a defense. Therefore, QBE is entitled to Summary Judgment declaring it has no duty to defend Third-Party Plaintiffs.

      **b.  <u>The Allegations in the Amended Complaint Do Not Fit the Definition of an "Occurrence" as Required Under the Policy.</u>**

An important and basic precept of statutory construction instructs "courts [to] give terms their ordinary meaning." <u>Property Casualty Co. of MCA v. Conway</u>, 687 A.2d 729, 731 (1997). Based on this principal, courts should interpret the meaning of the terms of an insurance policy in a manner which construes the terms to give them the outcome that meets the reasonable expectations of the parties in entering into the contract.  It has been consistently held that the courts should not give an insured a better policy than the one contracted for. <u>Harleysville Ins.</u>

Cos. v. Garitta, 785 A.2d 913, 917 (2001), citing Zacarias v. Allstate Ins. Co., 775 A.2d 1262 (2001).

Here, for the QBE policy to apply the damages alleged must have been caused by an "occurrence." (See Exhibit H at I(1)(b)(1)). The policy defines an "Occurrence" as an "accident, including continuous or repeated exposure to substantially the same harmful conditions." (See Exhibit H at V(13)). An accident is an unintended or unexpected event based on its plain meaning. It has been defined as "an event or condition occurring by chance or arising from unknown or remote causes ... an unforeseen unplanned event or condition ... a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Conway, 687 A.2d at 731.

Accordingly, the damages arising from the Plaintiff's alleged rape and Third-Party Plaintiffs' complicity in same should not trigger coverage here as these knowing and intentional acts do not fall within the definition of an "occurrence."

Even where an accident is recognized because the insured did not "intend[ ] or expect[ ] to cause an injury[,]" (High Point Ins. Co. v. J.M., 942 A.2d 804,809 (App.Div. 2008) citing Voorhees, 607 A.2d at 1264.) "[w]hen the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injure. That objective approach focuses on the likelihood that an injury will result from an actor's behavior rather than on the wrongdoer's state of mind." Id. at 809-810. The High Point court further cited Voorhees for the proposition that the "sexual assault of a child is so inherently injurious that it can never be an accident." Id. at 810. Similarly, the act of rape and Third-Party Plaintiffs' knowing and intentional acts in regard thereto are inherently injurious, and should not be considered an "accident."

Other jurisdictions faced with similar circumstances have reached the same result in considering whether intentional acts of sexual misconduct may be deemed an "accident" for coverage purposes where claims of vicarious liability are asserted against innocent insureds. See Sears v. National Union, 772 N.E. 2d 247 (Ill. App. Ct. 2002) (holding rape could not be considered accidental, and therefore, did not fall within the definition of occurrence triggering coverage); and Allstate Ins. Co. v. Steele, 74 F.3d 878 (8th Cir. 1996) (coverage was not triggered due to the fact that intentional criminal sexual contact could not be considered accidental); See also SCI Liquidating Corp. v. Hartford Fire Ins., 181 F.3d 1210 (11th Cir. 1999) (sexual harassment was not accidental and therefore did not fall within the definition of an occurrence triggering coverage).

The damage claims against Third-Party Plaintiffs are essentially based on allegations of complicity in the sexual assault on Amentler through knowing and intentional acts in violation of the law. Based on the above holdings it is clear that these actions do not fall within the plain and ordinary meaning of the term accident.  Moreover, given the reprehensible nature of the allegations made against the Third-Party Plaintiffs, the subjective intent to cause the alleged harm should not be considered. Therefore, the damages do not arise from an "occurrence" and all claims fall outside the scope of coverage under the QBE Policy.  Accordingly, QBE is entitled to Summary Judgment declaring it has no duty to defend Third-Party Plaintiffs.

### c.  **The Damages Alleged Do Not Fall Within the Scope of Coverage**

#### i.  *Bodily Injury and Property Damage*

Coverage A of the QBE Policy provides coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence."  (Exhibit H at I - Coverage A(1)(b)(1)).

The policy defines "bodily injury", "occurrence" and "property damage"  as:

**(3)**    'Bodily Injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. .

**(13)**    'Occurrence' means an accident, including continuous or repeated exposure to substantially the same harmful conditions. . .

**(17)**    'Property damage' means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it. . ."

(Exhibit H at V(3), (13), & (17)).

As defined in the policy, only plaintiffs' claims for bodily injuries from physical harm and the consequential emotional distress contained in Counts I through III, V through X and XIV through XV would qualify as "bodily injury". Emotional distress with physical manifestations would also fall within this coverage definition. Plaintiffs do not assert a claim for "property damage" as defined in the policy. However, for these damages to fall within the scope of coverage they must be caused by an "occurrence" as defined in the policy. (Exhibit H at I – Coverage A(1)(b)(1)). That definition equates occurrence with the term accident. (Exhibit H at V(13)). As already discussed the Amended Complaint alleges damages arising from intentional actions which cannot be considered an accident. Therefore, the damages do not arise from an "occurrence" and coverage is not triggered.

### ii. *Advertising Injury*

Coverage B of the QBE Policy provides coverage for damages because of "personal and advertising injury." (Exhibit H at I – Coverage B(1)(a)) Personal and advertising injury is defined in the policy in pertinent part as:

> **(14)**    'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> **a.**    False arrest, detention or imprisonment. . . ."

(Exhibit H at V(14))

This definition focuses on conduct rather than specific harm and includes consequential bodily injury. The conduct relevant here relates to Amentler's detention by Krol. Count II of the Amended Complaint asserts damage claims by both plaintiffs arising from Amentler's false imprisonment by Krol. (Exhibit D ¶ 51-55). However, the allegations in Count II are not directed at Third-Party Plaintiffs (Exhibit C ¶ 52-55), therefore there is no duty to defend Third-Party Plaintiffs against these allegations.

### iii.   *Punitive Damages*

None of the implicated coverages extend to plaintiff's claim for punitive damages. By definition the coverages are limited to compensatory damages resulting from actual injury. They do not include exemplary damages or those which are simply intended to punish. This exclusion by definition is consistent with law and public policy. Fireman's Fund Ins. Co. v. Imbesi, 826 A.2d 735, 757 (App. Div. 2003); Johnson v. Johnson v. Aetna, 667 A.2d 1087, 1091 (App. Div. 1995); Variety Farms, Inc. v. N.J. Manufacturers 410 A.2d 696, 703 (App. Div. 1980); and City of Newark v. Hartford, 342 A.2d 513, 518 (App. Div. 1975).

### iv.   *Attorney Fees*

Both Federal and New Jersey Courts follow what is referred to as the "American Rule" regarding the awarding of attorney fees, under that rule "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Rendine v. Pantzer, 661 A.2d 1202, 1219 (1994), citing Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975);

Gerhardt v. Continental Ins. Cos., 225 A.2d 328 (1966); Janovsky v. American Motorists Ins. Co., 93 A.2d 1 (1952). As an exception to the American Rule, Congress and the state legislatures have authorized courts pursuant to specific statutory enactments to order the losing party to pay a "reasonable" fee to the attorney for the prevailing party. Id.

Of the allegations asserted by Plaintiffs only those allegations in Counts VII though X would support an award of attorney fees.  Those Counts allege violations of the New Jersey Law Against Discrimination (Exhibit D ¶ 74-98) which specifically authorizes the prevailing party to be awarded reasonable attorney fees. N.J.S.A. § 10:5-27.1.  If Plaintiffs were to prevail on any other Count they would be subject to the "American Rule," as there is no statutory authority authorizing an award of attorney fees under such causes of action.

As will be discussed in more detail below, coverage for all Counts pertaining to the New Jersey Law Against Discrimination are specifically excluded under the Employment Related Practices Exclusion Endorsement to the QBE policy.  Accordingly those damages are not covered under the Policy.

### B. TO THE EXTENT THE ALLEGATIONS ARE WITHIN THE SCOPE OF COVERAGE, THEY FALL WITHIN THE SPECIFIC EXCLUSIONS PROVIDED FOR BY THE POLICY.

QBE maintains that none of the allegations in the Amended Complaint are covered under the plain language of the policy.  However, to the extent the court determines any such allegations fall within the scope of the policy they are excluded under the various specific exclusions included in the QBE policy.

### a.    **Intended or Expected Acts Exclusion**

Coverage A of the QBE Policy contains an exclusion stating that the insurance does not apply to:

> **a.  Expected or Intended Injury**
> "bodily injury" or "property damage" expected or intended from the standpoint of the insured.  (See Exhibit H at Section I Coverage A (2)(a)).

(Exhibit D at I - Coverage A (2)(a)).

Similarly, Coverage B contains an exclusion stating that this insurance does not apply to:

> **a.  Knowing violation of rights of another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury.
>
> **d.  Criminal Acts**
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured."

(See Id. at I - Coverage B (2)(a) and (d)).  Based on New Jersey law, these exclusions apply to Counts I through V and VII through XV of the Amended Complaint.

Third-Party Plaintiffs contend that for the intentional acts exclusion to be triggered, it must be shown that the insured "subjectively intended" to cause the injury that results from the intentional conduct.  Prudential Property & Casualty Ins. Co. v. Karlinski, 598 A.2d 918 (App.Div. 1991); SL Industries, Inc. v. American Motorists Ins. Co., 607 A.2d 1266(1992). However, an exception to the subjective intent inquiry was promulgated by the New Jersey Supreme Court in Voorhees for those acts considered particularly reprehensible.  For such acts, the exclusion is objectively triggered and there is no requirement for an inquiry into the insured's subjective intent.  Voorhees, 607 A.2d 913.  This exception has been applied in a number of cases, but repeatedly to those involving acts of sexual misconduct by an insured.  See

Harleysville Ins. Companies v. Garitta, 785 A.2d 913 (2001) (the insured failed to inform a sexual partner of his known HIV positive diagnosis); J.C. ex. Rel. M.C. v. N.B., 762 A.2d 1062 (App.Div. 2000) (the insureds accused of the sexual molestation of a child); Prudential Property Casualty Ins. Co. v. Boylan, 704 A.2d 597 (App.Div. 1998) (case involving the sexual molestation of a child). A similar policy consideration should exist where a knowing and intentional violation of the law exists.

Here, the damages alleged in Counts I through V and VII through XV arise from complicity in the sexual assault on Amentler and knowing and intentional violations of the law. (Exhibit D ¶ 46-68). Counts I through IV seek damages from the rapist Krol only. As such, Third-Party Plaintiffs do not require a defense to those Counts. To the extent any of these Counts assert claims against the Third-Party Plaintiffs, they necessarily implicate Third-Party Plaintiffs as being complicit in the sexual assault and are excluded from coverage on that basis, and because the subjective intent to harm is not applicable due to their reprehensible nature. Voorhees, 607 A.2d at 1265. Consequently, no duty to defend exists.

### b.    Applicability of Krol's Actions to Any Insured.

As noted above, the intentional act exclusion in the QBE Policy precludes coverage for injuries expected or intended from the standpoint of the insured. Third-Party Plaintiffs correctly note that where an insurer uses the terminology "an insured" same is equated with "any insured," and coverage is precluded as to all insureds for damages arising out of intentional acts of one of the insureds. See Villa v. Short, 947 A.2d 1217 (2008); Allstate Ins. Co. v. Roelfs, 698 F.Supp. 815, 822 (D.Alaska 1987).

However, Third-Party Plaintiffs incorrectly contend the opposite is true, that the term "the insured" is intended to apply only to the individual who is specifically alleged to have

committed the intentional acts.   Here, the insured is an LLC, and can act only through its members. Therefore, to the extent the members obtain coverage through that entity they are necessarily subject to its exclusions. Since Krol's acts are alleged to be the action of "the insured" the other members should be subject to that action. Moreover, the case law does not support Third-Party Plaintiff's conclusion.

Various New Jersey decisions have determined that coverage is not precluded to all insureds under an insurance policy because of the intentional acts of one insured where an intentional acts exclusion uses the term "the insured." However, those cases have only afforded coverage to the "innocent insureds" against claims of negligence.  See F.S. v. L.D., 827 A.2d 335 (App.Div. 2003) (denying coverage to an insured who intentionally failed to inform his sexual partner of his positive H.I.V. status, but affording coverage for his adult children against allegations of negligently failing to disclose the same information), see also Boylan, 704 A.2d 597 (denying coverage to a 15 year old accused of sexual assault, but affording coverage to his parents against claims of negligent supervision).   Here, Third-Party Plaintiffs seek a defense to claims which, to the extent they are asserted against Third-Party Plaintiffs, are not covered as knowing and intentional acts.

        **c.**      **Employer's Liability and Employment Related Practices Exclusions**

Coverage A of the QBE Policy contains an exclusion stating that the insurance does not apply to:

        **e.**      **Employer's Liability**

"Bodily Injury" to:

        **(3)**    an "employee" of the insured arising out of and in the course of:
                  **c.**  Employment by the insured; or

                  **d.**  Performing duties related to the conduct of the insured's business; or

    **(4)**    the spouse. . . of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

    **(3)**    whether the insured may be liable as an employer or in any other capacity; and

    **(4)**    any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Exhibit H at I- Coverage A (2)(e)).

Additionally, the Employment-Related Practices Exclusion Endorsement number CG 21 47 07 98 modified the Commercial General Liability Part of the Policy by adding the following exclusions to Coverage A of the QBE Policy

"This insurance does not apply to:

"Bodily injury" to:

    **(1)**    A person arising out of any:

        **(b)**    Refusal to employ that person;

        **(b)**    Termination of that person's employment; or

        **(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    **(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

    **(1)**    Whether the insured may be liable as an employer or in any other capacity; and

    **(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury."[1]

(Exhibit H at I- Employment Related Practices Exclusion Endorsement).

---

[1] That endorsement also provides a similar exclusion for Coverage B Personal and Advertising Injury Liability.

The Amended Complaint alleges that Perselay attended the function as an employee of the Fox & Hound. (Exhibit D ¶ 14). It also claims that Perselay's damages arise out of and in the course of his employment by the insured.

Similarly, Perselay's claims are Further coverage for Counts VII through XI excluded under the Employment-Related Practices Exclusion Endorsement number CG 21 47 07 98. For instance, Counts VII through XI allege harassment and the creation of a hostile work environment. (Id. ¶ 74 – 100) These counts are excluded under Section (1)(c) of that exclusion. Count XIV and Count XV relate to the termination of Perselay's employment with the Fox & Hound (Id. ¶ 105-110), and are therefore excluded under Section (1)(b) of the Employment-Related Practices Exclusion.

### d. Liquor Liability Coverage Exclusion for Employer's Liability

Coverage is further excluded under the Liquor Liability Part of the QBE policy which states the insurance does not apply to:

**c. Employer's Liability**

"Bodily Injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above

This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of "injury."

(Exhibit I at I(2)(c)).

Because the Amended Complaint alleges that Perselay was an employee of Fox & Hound and worked as a chef at the party (<u>Exhibit D</u> ¶ 14), this exclusion clearly precludes coverage for the damages alleged in Counts XII and XIII of the Amended Complaint.  As such, QBE is entitled to Summary Judgment declaring it has no duty to defend Third-Party Plaintiffs against the allegations contained in those Counts.[2]

## III.   <u>THE INSURED BREACHED THEIR CONDITIONS ON NOTICE.</u>

The Commercial General Liability Coverage form contains conditions which require the insured to notify the insurer as soon as practicable.  Specifically, the QBE Policy states:

**e.  Duties in the event of occurrence, offense, claim or suit**

i.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

(Exhibit H at IV(2)(a)).

That condition applies to both Coverage A and B contained in Section I of the QBE Commercial General Liability Policy.   A similar provision is contained under the Liquor Liability Coverage form as follows:

**f.  Duties in the event of injury, claim or suit**

i.  You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim.

(<u>Exhibit I</u> at IV(3)(a)

On January 29, 2008, a General Liability Notice of Occurrence/Claim form was filed on behalf of Fox & Hound (<u>Exhibit E</u>), this was the first notice QBE received of the event.  The actual event occurred on July 4, 2007 (<u>Exhibit D</u>), more than six months before notice was

---

[2] Both the Employer's Liability and Employment Related Practices Exclusions include the spouse of the person claiming injury which raises an interesting issue.  Although plaintiffs do not identify themselves as husband and wife, their use of the term domestic partner expresses a desire to attach significance to that term.  If it is determined that plaintiffs relationship constituted a common law marriage or some equivalent, then plaintiff Amentler's claims are also excluded.

provided to QBE. Since the allegations here are quite serious and involve a rape, it is presumed that the delay in time will have an adverse impact on the obtaining of forensic evidence, the location of witnesses and their recollection.

Generally, late notice will not void a policy unless there is both a breach of the notice condition and a substantial likelihood of appreciable prejudice to the insurer. See Gazis v. Miller, 892 A.2d 1277 (2006); and Cooper v. Government Employees Ins. Co., 237 A.2d 870 (1968). "In determining whether prejudice exists, a court should consider such factors as the availability of witnesses, the ability to discover information regarding the location of the accident, any physical changes in the scene during the delay, the existence of official reports concerning the occurrence, the preparation and preservation of demonstrative and illustrative evidence such as vehicles or photographs, and the ability of experts to reconstruct the scene." Morales v. National Grange Mut. Ins. Co., 423 A.2d 325, 329 (Law Div. 1980).

Here, a fact question remains as to whether QBE has suffered appreciable prejudice from the delay in receiving notice. Additional discovery is required to determine the present availability of witnesses and the extent of their recollection as well as what forensic evidence is available. Such discovery is required before the Court can make a meaningful determination regarding whether QBE has suffered appreciable prejudice as a result of the delay in receiving notice. As such, Third-Party Plaintiffs' Motion Summary Judgment is premature and should be denied.

On the other hand, there is no question of fact regarding the delay in providing notice. It is undisputed that the events giving rise to the Complaint occurred on July 4, 2007. (See Exhibit C ¶ 12 and Exhibit D ¶ 12). It is also undisputed that that the Defendants, or at a minimum Defendant Krol, were aware of the possibility that a complaint would be filed in connection with

the events of July 4, 2007.  And it is undisputed that QBE did not receive notice of the claim until January 29, 2008, more than six months after the events occurred. (Exhibit E). Accordingly, QBE is entitled to Partial Summary Judgment that the notice provisions of the QBE Policy were not adhered to.

## IV.   69 MAIN STREET, LLC IS NOT ENTITLED TO RELIEF WITHOUT FILING A PLEADING.

69 Main Street, LLC filed a letter with the Court, dated December 2, 2008, seeking to join the motion filed by Third-Party Plaintiffs, Owen and Donzella, and seeking to obtain identical relief as that sought by Third-Party Plaintiffs. (Exhibit G).  However, unlike Third-Party Plaintiffs, Owen and Donzella, 69 Main Street, LLC has failed to filed a Third-Party Complaint seeking declaratory relief against QBE or EastGuard.  In the absence of such a formal complaint, 69 Main Street, LLC is not entitled to the relief it now seeks.

## CONCLUSION

For the foregoing reasons Summary Judgment should be granted in favor of QBE Insurance Company and the Court should declare that it owes no duty to defend Third-Party Plaintiffs from the allegations in Plaintiffs complaint.

KALISON, MCBRIDE, JACKSON AND
HETZEL, P.C.
Attorneys for Third-Party Defendant,
QBE Insurance Company

BY: ___/s/ Robert B. Hille_____
        Robert B. Hille, Esq.

Dated: February 2, 2009