**\*Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| EDENA AMENTLER AND MICHAEL : | |
| PERSELAY, : | Civil Action No. 08-0351(FLW) |
| : | |
| Plaintiffs, : | |
| : | **OPINION** |
| v. : | |
| : | |
| 69 MAIN STREET, LLC d/b/a FOX AND : | |
| HOUND TAVERN, <u>et al.</u>, : | |
| : | |
| Defendants. : | |
| : | |
| and : | |
| : | |
| GEORGE P. OWEN AND GEORGE A. : | |
| DONZELLA, : | |
| Third-Party Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| QBE INSURANCE CO. and EASTGUARD : | |
| INSURANCE CO., : | |
| : | |
| Third-Party Defendants. : | |
| _____: | |

<u>**WOLFSON, U.S.D.J.**</u>

On July 4, 2007, Defendants/Third-Party Plaintiffs, George Owen and George Donzella ("Third-Party Plaintiffs" or "Owen and Donzella") held a business party at their home during the course of which an alleged sexual assault incident occurred. This underlying incident gave rise to the current Third-Party Complaint against two defendant insurance companies, QBE Insurance Co.

1

("QBE") and EastGuard Insurance Co. ("EastGuard")(collectively, "Defendants").  The instant matter is a dispute between Third-Party Plaintiffs and Defendants regarding two separate insurance policies.  Third-Party Plaintiffs seek judgment declaring that (1) both carriers owe a defense and indemnity obligation with respect to the underlying complaint filed in this suit; and (2) Third Party Plaintiffs have the right to select counsel to defend them, which duty to defend must be satisfied by QBE and EastGuard funding the counsel fees and litigation expenses.  Third-Party Plaintiff moves for summary judgment on all counts.  QBE cross-moves for summary judgment, while EastGuard moves to dismiss the Third-Party Complaint.  For the reasons that follow, Third Party Plaintiffs and QBE's motions are each denied in part and granted in part.  EastGuard's motion is denied.

## BACKGROUND FACTS

The Court will not recount facts not relevant to the present motions since the resolution of these motions requires only an interpretation of the insurance policies.  Accordingly, the Court will summarize the underlying incident as alleged in the Amended Complaint.  On July 4, 2007, Third-Party Plaintiffs held a party at their home for the purpose of promoting and marketing the business of the Fox and Hound Tavern (the "Tavern") which they own with several others.  Plaintiff Michael Perselay, the executive chef of the Tavern at that time, attended the party and brought his girlfriend, plaintiff Edena Amentler (collectively, "Plaintiffs").  Amentler alleges that she was sexually assaulted by the co-defendant, Jeffery Krol, while at the party.  Perselay, in turn, alleges that following the alleged sexual assault he was wrongfully terminated and discriminated against by his employer.

Plaintiffs filed the underlying Complaint and subsequently filed an Amended Complaint asserting the following causes of actions:

2

1. Count I:      Assault and Battery
2. Count II:     False Imprisonment
3. Count III:    Assault and Battery with a Deadly Weapon
4. Count IV:     Placing One in an Enhanced Risk of Developing HIV or AIDS
5. Count V:      Intentional Infliction of Emotional Distress
6. Count VI:     Negligent Infliction of Emotional Distress
7. Count VII:    New Jersey Law against Discrimination ("NJLAD") - sexually hostile work environment
8. Count VIII:   NJLAD - quid pro quo sexual harassment
9. Count IX:     NJLAD  - unlawful retaliation
10. Count X:      NJLAD - aiding and abetting liability
11. Count XI:     NJLAD - failure to maintain a safe workplace
12. Count XII:    Dram Shop Act and Failure to maintain a safe environment
13. Count XIII:   Dram Shop Act and Serving Alcohol to Minors
14. Count XIV:    Title VII of the Civil Rights Act
15. Count XV:     Conscientious Employee Protection Act

At the time of the alleged incident, the Tavern was insured under two polices of insurance: a Commercial General liability Policy ("CGL Policy") issued by QBE; and a Workers' Compensation/Employers' Liability Policy ("WCL" Policy) issued by EastGuard.

In particular, the CGL Policy issued by QBE contains numerous provisions, including a general liability form and a liquor liability part. Prior to the July 4th party, Third-Party Plaintiffs obtained an Endorsement to the general liability part of the CGL that provides as follows:

> The Commercial General Liability Coverage Part has been amended as follows:
> The following Additional Insured-Designated Person or Organization has been added with respects to the event on 7/4/07:
> Geroge Donzella & George Owen
> 22 Terrill Drive
> Califon, NJ 07830

On or about January 29, 2008, just four days after the Complaint was filed in this case, Third-Party Plaintiffs forwarded a copy of the pleadings to QBE. Initially, QBE disclaimed coverage as to all defendants for the claims by both Plaintiffs on Counts I through VI. It reasoned that "intentional acts" are expressly excluded from the CGL Policy. Second, although QBE agreed to

3

defend Counts XII and XIII of the Complaint, which QBE determined to relate to "Dram Shop violations," it limited its coverage obligation to only causes of action asserted by Amentler.   QBE disclaimed coverage on any claims by Perselay on Counts XII and XIII asserting that these claims are excluded by the "Employer's Liability" exclusion of the policy.   QBE disclaimed coverage as to all of the other causes of action pled in the Complaint. However, QBE's offer to provide a limited defense was conditioned upon Third-Party Plaintiffs agreeing to its denial of coverage as to the other causes of action.   Third-Party Plaintiffs did not execute, and effective rejected, the Reservation of Rights Letter.

The second implicated insurance policy is the Worker's Compensation/Employers' Liability Policy ("WCL") issued by EastGuard to the Tavern.   Third-Party Plaintiffs tendered the claim to EastGuard seeking defense and indemnification.   EastGuard acknowledged that it owes a duty to defend Counts VII, VIII, IX, X, XIV and XV of the Amended Complaint.   Subsequent to its issuance of Reservation of Rights Letters, EastGuard retained and assigned an attorney to represent all of the defendants in this action.   Third-Party Plaintiffs challenged this decision and asserted that the joint representation of all defendants constituted a conflict of interest.   However, EastGuard reaffirmed its position that a conflict of interest does not exist.

Due to the these disputes, Third-Party Plaintiffs brought a Third-Party Declaratory Judgment Complaint against QBE and EastGuard.   Subsequently, they filed the instant motion for summary judgment.   In response, QBE cross-moves for summary judgment; EastGuard moves to dismiss the Third-Party Complaint.

After the filing of the motions, the Court conducted a telephone conference with the parties on June 22, 2009, to clarify Plaintiffs' allegations in Counts I - V with respect to Third-Party

4

Plaintiffs' involvement in the intentional act allegedly committed by defendant Krol. Plaintiffs'

counsel, Alan S. Fellheimer, Esq., represented to the Court that Counts I - V are not asserted against

Third-Party Plaintiffs. As a result, the Court narrowed the issues in these motions. Specifically, the

Court need not address QBE's coverage for Third-Party Plaintiffs with respect to Counts I - V since

there is no duty to defend these Counts which are not asserted against these insureds. However, this

Opinion will discuss QBE's duty to defend Counts VI, XII and XIII and EastGuard's obligations.

## DISCUSSION

### I.       Standard of Review

#### A.       Summary Judgment

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the

facts in the light most favorable to the non-moving party, the moving party is entitled to judgment

as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to

be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for

the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material

fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the

light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material,

it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d

at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue

of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the

nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a

genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J.

1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party

must identify specific facts and affirmative evidence that contradict those offered by the moving

party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations,

general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of

Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497,

500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of

evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d

314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56© mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role

is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is

a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of

the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).


### B.    Motion to Dismiss

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Id</u>. at 1968 (quoting <u>Conley</u>, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." <u>Id</u>. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 545).

## II.    CGL Policy

The following are relevant provisions in the CGL Policy at issue:

Section I - Coverages

Coverage A Bodily Injury and Property Damage Liability

1. Insuring Agreement

a. [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [QBE] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [QBE] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this

7

insurance does not apply . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "covered territory[.]"

<u>See</u> The CGL Policy at I - Coverage A (1) (a) & (b).

Coverage B Personal and Advertising Injury Liability

1. Insuring Agreement

a. [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [QBE] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [QBE] will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . .

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business . . . ."

<u>See</u> The CGL Policy at I - Coverage B (1) (a) & (b).

This Liquor Liability Coverage Part of the QBE Policy provides additional coverage:

Section I - Liquor Liability Coverage

1. Insuring Agreement

a. [QBE] will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. [QBE] will have the right and duty to defend the insured against any "suit" seeking those damages.  However, [QBE] will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply . . . ."

<u>See</u> The Liquor Liability Coverage at I (1)(a).

8

This insurance policy does not apply to:

 a.  Expected or Intended Injury
 "bodily injury or "property damage" expected or intended from the standpoint
 of the insured.

 <u>See</u> the CGL Policy at I - Coverage A (2)(a).

 a.  Knowing violation of rights of another
 "Personal and advertising injury" caused by or at the director of the insured
 with the knowledge that the act would violate the rights of another and would
 inflict personal and advertising injury.

 d.  Criminal Acts
 "Personal and advertising injury" arising out of a criminal act committed by or
 at the director of the insured.

 <u>See</u> the CGL Policy at I - Coverage B (2)(a) and (d).

* * *

In New Jersey, the "duty to defend" is a contractual obligation defined by the insurance policy. <u>Horesh v. State Farm Fire & Cas. Co.</u>, 265 N.J. Super. 32, 38 (App. Div. 1993). The insurer has a duty to defend the insured "when the complaint states a claim constituting a risk insured against." <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 173-74 (2008). This duty is broader than the duty to pay, <u>NPS Corp. v. Insurance Co. of No. Amer.</u>, 213 N.J.Super. 547, 550-51 (App.Div.1986), but only because the duty to defend, unlike the duty to pay, is not dependent upon the ultimately determined merits of the claim. <u>Sahli v. Woodbine Board of Education</u>, 193 N.J. 309, 322 (2008). Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. <u>Danek v. Hommer</u>, 100 A.2d 198, 202-03 (App. Div. 1953). Moreover, "[i]f the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." <u>Voorhees</u>, 128 N.J. at 173. If the complaint asserts both covered and

9

non-covered claims, "the duty to defend will continue until every covered claim is eliminated." <u>Id.</u> at 174.

Conversely, there is no duty to defend if the claim is beyond the scope of the insuring agreement or precluded by a policy exclusion. <u>Central National Ins. Co. v. Utica Nat. Ins. Group</u>, 557 A.2d 693, 694 (App. Div. 1989). Thus, when an excluded claim is made against the insured, the insurer has no duty to defend. <u>Id.</u> Further, in circumstances where there is a multi-count complaint, the duty to defend extends only to counts containing covered claims. <u>Grand Cove II Condominium Ass'n, Inc. v. Ginsberg</u>, 291 N.J. Super. 58, 73 (App. Div. 1996).

### A.   Whether Third-Party Plaintiffs are "Insureds" under the CGL Policy

The threshold question in terms of coverage is whether Third-Party Plaintiffs qualify as "insureds" under the CGL Policy. Despite the execution of the Endorsement to the CGL Policy, which specifically extended coverage to Third-Party Plaintiffs for the July 4th party, QBE maintains that the CGL Policy only covers Fox & Hound and its owners for business purposes. For support, it cites to the language of Section II of the CGL Policy which states the following:

1.    If you are designated in the Declarations as:

    a.    an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    c.    A limited liability company, you are insured. Your members are also insureds but only with respect to the conduct of your business.

<u>See</u> the CGL Policy at II(1)(a) & (c).

In accordance with the provision, QBE argues that Counts VI, XII and XIII are inconsistent with the conduct of Fox & Hound's business, and therefore, Third-Party Plaintiffs should be disqualified as insureds under the policy. However, having excluded any mention of the

Endorsement, QBE's analysis is misplaced.  Third-Party Plaintiffs' claim for coverage derives from the specific language of the Endorsement to the CGL Policy, which states unequivocally that Owen and Donzella were "Additional Insured-Designated Person . . . [that] ha[ve] been added with respects to the event on 7/4/07."  <u>See</u> the Endorsement.   By entering into the Endorsement, QBE acknowledged that the provisions of the CGL applied with equal force to the July 4th event, which was indeed a business function held by Fox & Hound and its members.  Third-Party Plaintiffs were charged and paid $150 for this additional coverage, which extended the "insured" status to them for the July 4, 2007 party, the event that gave rise to the allegations in the underlying Complaint.  Certainly, Third-Party Plaintiffs are "insureds" for the purposes of the CGL Policy.  Thus, QBE is obligated to defend Owen and Donzella, unless any of the exclusions to the policy applies.

## B.    Count VI - Negligent Infliction of Emotional Distress

QBE concedes that Plaintiffs' claims for bodily injuries from physical harm and the consequential emotional distress contained in Count VI would qualify as "bodily injury."  Emotional distress with physical manifestations would also fall within the coverage definition.  Accordingly, with respect to scope of coverage, Count VI is covered under the policy.  Despite such concessions, QBE maintains that it nevertheless does not have a duty to defend Count VI because there is a conflict of interest with regard to Count V and VI.  Without expanding on QBE's position, because QBE does not have to defend Count V, its conflict of interest argument is moot.  Accordingly, QBE has a duty to defend Count VI, particularly since intentional acts exclusions clearly do not exclude negligent conduct.  <u>See</u> <u>F.S. v. L.D.</u>, 362 N.J. Super. 161, 169 (App. Div. 2003)(holding that intentional acts exclusion does not bar coverage to allegations of negligent conduct).

###### C.        Counts XII and XIII - The Dram Shop Act Claims

Third-Party Plaintiffs also claim that QBE owes them coverage on Counts XII and XIII, which allege "Dram Shop" claims against the defendants.  Relevant to this claim are the exclusions to the Liquor Liability Coverage Form of the CGL Policy.  The exclusion provisions state:

> c. Employer's Liability
>
>    "Bodily Injury" to:
>
>    (1) An "employee" of the insured <u>arising out of and in the course of</u>:
>
>       (a) Employment by the insured; or
>       (b) Performing duties related to the conduct of the insured's business; or
>
>    (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
>    This exclusion applies:
>
>    (1) Whether the insured may be liable as an employer or in any other capacity; and
>
>    (2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury."

<u>See</u> Liquor Liability Coverage Form at I(2)(c)(emphasis added).   At this juncture, QBE acknowledges that it owes Third-Party Plaintiffs the duty to defend Counts XII and XIII asserted against them by Amentler.[1]  In arguing that these exclusions do not apply, Third-Party Plaintiffs advance that there are no allegations in the Amended Complaint that Perselay was injured in the course of his employment as a result of Donzella and Owen's service of alcoholic beverages.  While

---

[1]

However, QBE does reserve its right to deny coverage pursuant to the exclusions if it is proven that Amentler is a common law wife of Perselay, particularly since the Amended Complaint alleges that they are "domestic partners."

Third-Party Plaintiffs recognize that Perselay was an employee of Fox & Hound, they, nevertheless, argue without legal support that there is no claim that Perselay suffered injuries in the course of that employment at the July 4th party.

To resolve this issue, this Court need not look further than the New Jersey Supreme Court's decision in <u>American Motorists Ins. Co. v. Lumbermens Mutual Casualty Co.</u>, 155 N.J. 29 (1998), wherein the State Supreme Court interpreted a substantially similar employment exclusion clause in a Commercial general liability policy.  The State's High Court explained that:

> the critical phrase "arising out of," which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided." <u>Records v. Aetna Life & Cas. Ins.</u>, 294 N.J.Super. 463, 468, 683 A.2d 834 (App.Div.1996) (quoting <u>Westchester Fire Ins. Co. v. Continental Ins. Co.</u>, 126 N.J.Super. 29, 38, 312 A.2d 664 (App.Div.1973), <u>aff'd o.b.</u>, 65 N.J. 152, 319 A.2d 732 (1974)), <u>certif. denied</u>, 151 N.J. 463, 700 A.2d 876 (1997); <u>see also</u> <u>Allstate Ins. Co. v. Moraca</u>, 244 N.J.Super. 5, 13 n.1, 581 A.2d 510 (App.Div.1990) (noting that exclusionary language in homeowner's policy barring coverage for injuries "arising out of" ownership or use of motor vehicle was enforceable if "accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile")(quoting <u>Hogle v. Hogle</u>, 167 Conn. 572, 356 A.2d 172 (1975)).

<u>American Motorists</u>, 155 N.J. at 35-36.  The Court also advised that "an insurance policy should generally be interpreted 'according to its plain and ordinary meaning,' so as not to disregard the 'clear import and intent' of a policy exclusion." <u>Id.</u> at 41; <u>see</u> <u>Schmidt v. Smith</u>, 294 N.J. Super. 569, 574-75 (App. Div. 1996)(the plaintiff sued her employer alleging various claims relating to acts of sexual harassment and the appellate court held coverage should not have been afforded to the employer under the CGL policy because of an employee exclusion clause).

Here, "in assessing whether [] [QBE] has a duty to defend, the appropriate focus must be on

13

essence of the cause of action rather than on the conduct relied on in support of the claim."

American Motorists, 155 N.J. at 39 (citations omitted).  Based on the allegations, Perselay was an employee at the July 4th party because he worked as a chef, a status which is not in dispute.  Plaintiffs also state that Amentler was invited by Perselay to entertain the guests at the party.  Thus, the purpose of their presence at the party was related to Perselay's employment with Fox & Hound.  The alleged injuries[2] sustained by Perselay- assuming they are valid - were caused by Amentler's sexual assault by Krol, which stemmed from Third-Party Plaintiffs' conduct of allegedly serving an exorbitant amount of alcoholic beverages during the party to business invitees as well as insureds, creating a risk of sexual assault.  Therefore, Perselay's harm was "causally connected with" the scope of his employment because the alleged injuries were incidental to his job, rather than "proximately caused by" his duties as a chef, which Third Party Plaintiffs advance would be necessary to trigger the employee exclusion.  Id. at 39 (citations omitted).  Accordingly, QBE only has to assume defense for Third-Party Plaintiffs on Counts XII and XIII as asserted by Amentler, not Perselay.[3]

### D.    Whether Third-Party Plaintiffs Breached the Conditions on Notice

The CGL Policy coverage contains conditions which require the insured to notify the insurer as soon as practicable.  Specifically, the policy states:

> e.  Duties in the event of occurrence, offense, claim or suit

---

[2]

. Because the allegations are inartfully pled, it is difficult for the Court to discern the nature of Perselay's injuries.

[3]

Perselay is not without any redress.  The New Jersey Supreme Court alluded in dicta that the employer's liability section of the workers' compensation policy is a "gapfiller," providing coverage for employees' job-related bodily injuries whether not covered under the Worker' Compensation Act.  Id. at 37.

14

I.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

<u>See</u> The CGL Policy at IV(2)(a).  QBE contends that Third-Party Plaintiffs breached the conditions on notice as they filed their claim more than six months after the alleged incident, which is undisputed.  It urges the Court to deny summary judgment on this issue because a fact question remains as to whether QBE suffered appreciable prejudice from the delay in receiving notice.

The notice provision of the CGL policy requires that the insured give notice "as soon as practicable of an 'occurrence' . . . which may result in a claim."  This phrase has been construed to mean within a reasonable time.  <u>Peskin v. Liberty Mutual Ins. Co.</u>, 214 N.J. Super. 686 (Law Div. 1986).  Generally, late notice will not void a policy unless there is both a breach of the notice condition and a substantial likelihood of appreciable prejudice to the insurer.  <u>See</u> <u>Gazis v. Miller</u>, 892 A.2d 1277 (2006).  According to this test, appreciable prejudice exists where: (1) substantial rights of the insurer have been "irretrievably lost;" and (2) the insurer can show a likelihood of success in defending against the victim's claim.  <u>Morales v. National Grange Mutual Ins. Co.</u>, 176 N.J. Super. 347, 355-56 (Law Div. 1980).  In determining whether prejudice exists, a court should consider such factors as "the availability of witnesses, the ability to discovery information regarding the location of the accident, any physical changes in the scene during the delay, the existence of official reports concerning the occurrence, the preparation and preservation of demonstrative and illustrative evidence such as vehicles or photographs, and the ability of experts to reconstruct the scene."  <u>Id.</u>

Typically, the determination of whether an insured gave notice to its insurer within a reasonable time, "depends on the facts and circumstances of the particular case, and is a question of

15

fact for resolution by the jury or fact-finder." <u>Figueroa v. Puter</u>, 83 N.J. Super. 349, 354 (App. Div. 1964).  The New Jersey Supreme Court, however, opined that "the insured does not lose the agreed policy protection if he omits to give notice because he reasonably and in good faith believes no claim against him is contemplated either because the damage is trivial or because there is no suggestion in the circumstances that he is causally involved. This accords with the reasonable expectation of the parties to the insurance arrangement." <u>Cooper v. Government Employees Ins. Co.</u>, 51 N.J. 86, 90 (1968).

Third-Party Plaintiffs contend that notwithstanding that the determination of appreciable prejudice is fact-intensive, under the circumstances of this case, summary judgment is appropriate because they had no reason to expect that they would be sued by Amentler.  The Court agrees.  There are no allegations that either Donzella or Owen were personally involved in the alleged sexual assault; in fact, Plaintiffs' counsel clarified as such.  Clearly, Third-Party Plaintiffs were reasonable in believing that no claims against them were contemplated since the alleged incident arose out of circumstances that Third-Party Plaintiffs were "casually involved."  Once the Complaint was filed, Third-Party Plaintiffs immediately tendered the claims to QBE.  Pursuant to <u>Cooper</u>, this accords with the reasonable expectation of the parties to the CGL policy.  Morever, the burden of proof of such prejudice is on the carrier, QBE.  <u>Morales</u>, 176 N.J. Super at 351.  In its cross-motion, QBE does nothing more than suggest that its rights may have been lost, without directing the Court to any concrete prejudice it would have suffered.  For this motion, to survive summary judgment, QBE must point to more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim.  There is no indication that QBE would have done anything differently if it had learned of Third Party Plaintiffs' claims in July 2007, rather than January 2008.  <u>Id</u>; <u>Sagendorf</u>

16

v. Selective Ins. Co. v. Am., 293 N.J. Super. 81, 95 (App. Div. 1996)(a carrier's attempt to raise potential fact issues affecting the liability case will not permit it to disclaim coverage based upon an insured's alleged late notice).  Importantly, QBE must raise issues of fact that substantial rights pertaining to a defense against the claims have been irretrievably lost; however, it failed to do so, and thus, Third Party Plaintiffs' summary judgment is granted in this respect.

In sum, for the reasons set forth above, QBE has the duty to defend Third-Party Plaintiffs on Plaintiffs' claims in Count VI and Amentler's claims in Counts XII and XIII.

**III.    WCL Policy**

At the outset, EastGuard acknowledges its duty with regard to defense and indemnity of Third-Party Plaintiffs pursuant to the WCL Policy.  Prior to motion practice, counsel for Third Plaintiffs, Hill Wallack LLP, was advised that EastGuard would assign separate counsel for Donzella and Owen to defend them on all Counts, and pursue the Third-Party Complaint against QBE, the liability carrier, which would moot the issues raised in the Third-Party Complaint.[4]

Notwithstanding EastGuard's agreement, Third-Party Plaintiffs raise a number of issues with respect to EastGuard's designation of legal representation.  First, they are "troubled" by EastGuard's proposed counsel because the same law firm that is representing EastGuard in this coverage litigation would assume defense for Third-Party Plaintiffs.  Moreover, Third Party Plaintiffs argue that

---

[4]

In their Reply, Third-Party Plaintiffs suggest that EastGuard's offer is limited by the carrier's reservation of its right to disclaim its indemnity obligation.  Indeed, during negotiations, EastGuard offered to assign Third-Party Plaintiffs their own separate counsel under the reservation and conditions with respect to indemnification.  Notwithstanding the previous offer, having reviewed EastGuard's submissions in connection with its motion to dismiss, nowhere does it reserve such right.   Rather, EastGuard agreed that it will defend all Counts and indemnify on behalf of Third-Party Plaintiffs.  See Brief in Support of EastGuard's Motion to Dismiss at p. 9.

17

EastGuard's ability to disclaim any indemnity obligation, except for the very limited circumstances in which Perselay suffered "physical manifestations" of his alleged emotional distress, also presents a conflict.  To the contrary, the Court does not find any conflict in this context.  The majority of the employment counts relate to discrimination and hostile work environment claims.   Indeed, EastGuard has an interest in vigorously defending these claims, especially with regard to liability.  Simply put, if Third Party Plaintiffs are relieved of liability with respect to these claims, EastGuard would not have to pay any award.  The Court recognizes that latent conflicting interests are always present as between an insured and insurer.  However, the insurer owes the insureds the paramount duty of loyalty and professional self-abnegation.  See Lieberman v. Employers Ins. of Warsaw, 84 N.J. 325, 340 (1980).  At this juncture, the WCL Policy provides EastGuard the right and duty to defend and the Court has no basis to direct the carrier to choose which attorney to carry out that task.

Nevertheless, Third-Party Plaintiffs urge the Court to follow the holding in Dunne v. Fireman's Fund American Ins. Co., 69 N.J. 244 (1976), wherein the New Jersey Supreme Court allowed the insureds to select their counsel, subject to the carrier's approval, in circumstances where there are covered claims and un-covered claims.  The factual scenario presented in Dunne differs from the one in the present case.  In Dunne, the individual defendants were faced with allegations of false arrest, false imprisonment, libel, slander, invasion of privacy, and assault and battery.  Additionally, there was a count for negligence.  Without a detailed analysis, the State Supreme Court, concerned with the potential existence of a conflict because the insurer was defending all of the claims, allowed the insureds to select their own counsel.

In Grand Cove, the appellate court explained this conflict:

> Problems often arise with respect to the duty to defend where, as here, the

complaint against the insured alleges various causes of action, some of which
are not within the scope of the insurance contract. For example, where a
conflict of interest exists between the insurer and the insured on the issue of
coverage, our courts have established procedures by which to resolve some of
those problems.

Where a conflict exists between an insurer and its insured by virtue of the
insurer's duty to defend mutually-exclusive covered and non-covered claims
against the insured, the duty to defend is translated into a duty to reimburse the
insured for the cost of defending the underlying action if it should ultimately
be determined, based on the disposition of that action, that the insured was
entitled to a defense

Grand Cove, 291 N.J. Super. at 73; see also Burd v. Sussex Mut. Ins. Co. 56 N.J. 383, 390-91

(1970).  However, "when insurance companies failed to produce any facts to negate coverage . . . and

their claims of potential conflict [were] illusory, the insurers would not be permitted to turn their

duty to defend into a duty to reimburse."  Id. at 75.

In the present case, Third Party Plaintiffs urge this court to adopt the approach used in Dunne.

However, Dunne is inapposite.  As Third-Party Plaintiffs themselves point out in their submissions,

the "conflict of interest" identified by Grand Cove does not apply here because there are no

exclusions which may serve to preclude coverage.  Rather, Third-Party Plaintiffs submit that they

seek to trigger both QBE and EastGuard's obligations to defend those counts that fall within their

respective coverages.  The Court does not envision any conflicts for EastGuard to defend

"employment" claims because there are no mutually-exclusive covered and non-covered claims

included in Counts VII - XI, XIV and XV, unlike the claims in Dunne and Grand Cove.  Likewise,

there are no conflict issues with respect to QBE's defense of "bodily jury" claims arising from

Counts VI, XII and XIII.  Indeed, the only conflict, which EastGuard has already addressed, is

appointing one counsel for all the defendants, including Third Party Plaintiffs.  Now, EastGuard has

agreed to assign separate counsel to Third Party Plaintiffs.  In sum, both insurers are obligated to appoint counsel to defend these Counts on behalf of Third-Party Plaintiffs.  Apparently, they have agreed to appoint and share one counsel.  Having rejected Third-Party Plaintiffs' argument on this point, at this juncture, the Court has no basis to require QBE or EastGuard to appoint Hill Wallack as defense counsel since the Court does not foresee any conflicts.  However, this does not preclude Third-Party Plaintiffs from requesting appropriate relief from the Court should a conflict arise regarding legal representation.

Finally, Third-Party Plaintiffs request reimbursement of attorneys' fees and costs incurred to date from EastGuard and QBE because of their abdication of coverage obligations.  The Court declines to address the fee issue in this Opinion.  A separate action for fees should be filed.

An apporpriate Order shall follow.

DATED:  June 30, 2009

_____
/s/Freda L. Wolfson
The Honorable Freda L. Wolfson, U.S.D.J.

20