**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDENA AMENTLER and MICHAEL PERSELAY, | Civil Action No.: 08-351 |
| Plaintiffs, | |
| v. | **MEMORANDUM** |
| 69 MAIN STREET, LLC d/b/a FOX AND HOUND TAVERN, GEORGE P. OWEN, TOM J. STINER, GEORGE A. DONZELLA, and JEFFERY J. KROL, | |
| Defendants. | |

This matter comes before the Court on four motions for summary judgment. On February 2, 2008, plaintiffs Edena Amentler and Michael Perselay (collectively, "Plaintiffs") filed an Amended Complaint against 69 Main Street, LLC d/b/a Fox and Hound Tavern (the "Tavern"), George A. Donzella, Jeffrey J. Krol, George P. Owen, and Tom J. Stiner (collectively "Defendants") alleging fifteen counts stemming from an alleged sexual assault. Some of the Defendants are represented by more than one lawyer for various legal issues. On April 25, 2011, defendants Donzella and Owen in their individual capacities filed separate but identical motions for summary judgment of Counts VI through XV.[1] For the reasons stated below, Defendants' motions are granted in part and denied in part.

---

[1]     Since almost all of the substantive arguments and factual recitations included in the four motions derive from the twin briefs filed on April 25, 2011 by Donzella and Owen, all references made herein to Plaintiffs' Supplemental Brief are to the Brief in Support of Defendant(s) George Donzella and George Owen Motion for Summary Judgment [Docket Entry No. 126] unless otherwise stated.

I

On July 4, 2007, an independence day party was held at a home owned by defendants George A. Donzella and George P. Owen. Am. Compl. ¶ 12; Supp. Br. 4. The stated purpose of this party was to promote the Tavern, and the party was attended by the Tavern's employees, management, and some regular customers. Supp. Br. 4; Opp'n Br. 3-4. On the date of the party, defendants Donzella, Tom J. Stiner, and Jeffrey J. Krol were co-owners of the Tavern. Supp. Br. 4. Owen did not own any portion of the Tavern. *Id.*; Donzella T. 6, 6 through 18. At the time, plaintiff Michael Perselay was the Tavern's executive chef, and plaintiff Edena Amentler was Perselay's domestic partner. Am. Compl. ¶¶ 3-4. On the date in question, Perselay was forty-seven years old, and Amentler was twenty years old. Supp. Br. 4.

According to Plaintiffs, at the party, Krol raped Amentler. Am. Compl. ¶¶ 30-31. According to Defendants, including Krol, Krol and Amentler engaged in consensual sex (hereinafter referred to as the "sex act"). Supp. Br. 5. The sex act was not witnessed by others. However, Plaintiffs allege that Perselay knocked on a locked door of a bedroom on the second floor of the Donzella/Owen house and heard whispering, but he did not know who was within the room. Perselay T. 173, 6 through 174, 4.

Plaintiffs and Defendants agree that, prior to the sex act, Amentler drank alcohol. Supp. Br. 5; Opp'n Br. 5. The parties disagree, however, about who supplied the alcohol to Amentler. Supp. Br. 5; Opp'n Br. 5. It is undisputed that alcohol was made generally available to all of the party guests. Owen T. 25, 9 through 14 and 27, 20-21; Perselay T. 220, 21 through 221, 13. It is also undisputed that Amentler was below the legal drinking age. Am. Compl. ¶ 3; Supp. Br. 4. Plaintiffs contend that Amentler was served alcohol at the party. Amentler T. 50, 3 through 51, 9;

Perselay T. 157, 15 through 22. Defendants contend that Amentler brought her own alcohol to the party. Supp. Br. 5; Owen T. 60, 4 through 10. Defendants also contend that, before the party, Perselay told several of the Defendants that Amentler was twenty-two years old. Supp. Br. 5. Although they never checked Amentler's proof of identification, Defendants argue that they had no reason to believe that Amentler was a minor at the time. *Id.* at 22.

On July 6, 2007, Amentler visited the Easton General Hospital for examination and treatment of her alleged sexual assault. In connection with this visit, the Tewksbury police were called to the hospital and interviewed Amentler. *Id.* at 7. On the same day, Perselay, Donzella, Krol, Owen, and Stiner met to discuss the events of July 4, 2007, including the sex act. Krol T. 86, 23 through 89, 19; Owen T. 94, 10 through 97, 12 and 99, 12 through 100, 20. Around the same time, Perselay took one week off from work. Am. Compl. ¶ 43; Supp. Br. 8. Plaintiffs characterize this week as "an involuntary mandatory vacation." Am. Compl. ¶ 43. Defendants claim it was a "one week paid vacation to cool off." Supp. Br. 8. Following the week off, Perselay returned to his employ as executive chef for the Tavern. *Id.* Plaintiffs allege that during this time, Defendants pressured Perselay to refrain from filing a civil lawsuit. Opp'n Br. 40.

On January 17, 2008, Plaintiffs filed this civil lawsuit.[2] In their initial Complaint, Plaintiffs alleged thirteen separate counts. Compl. ¶¶ 44-102. Counts I through V asserted intentional tort claims against Krol. *Id.* at 44-66. Counts VI through XIII asserted claims against all Defendants for negligence, service of alcohol to a minor (Amentler), and violation of the New Jersey Law Against Discrimination ("NJLAD"). *Id.* at 67-102. Within a week of service of the

---

[2]

This Court exercised jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

Complaint, Perselay was fired as executive chef. Am. Compl. ¶ 44-45.

On February 2, 2008, Plaintiffs amended their Complaint to include two additional counts related to Perselay's firing. [Docket Entry No. 7].  Plaintiffs claim that Perselay was fired in retaliation for filing this lawsuit under the NJLAD and the Conscientious Employer Protection Act ("CEPA"). Am. Compl. ¶¶ 105-10.  Defendants claim that the decision to fire Perselay was based on the totality of the circumstances, including Perselay's allegedly poor work ethic, Perselay's failure to hire a sous chef, and Perselay's inability to work with two of the Defendants. Supp. Br. 8.  However, Defendants also admit that at least one of the circumstances that led to Perselay's termination was his having filed this lawsuit. *Id.*

## II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Such a fact is considered material only if the fact may affect the outcome of the litigation based on the substantive law. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party must produce specific facts showing that there is a genuine issue for trial. *Jersey*

*Cent. Power & Light Co. v. Twp. of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985) (citation omitted).

"[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."

*Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) (*citing* Fed. R. Civ. P.

56(e)).

III

A.  Claims Against George Owen

      Plaintiffs assert ten claims against George Owen as part owner of the Tavern. Am.

Compl. ¶¶ 69-110.  However, Plaintiffs have provided uncontroverted evidence that George

Owen does not co-own the Tavern. Supp. Br. 4; *see also* Opp'n Br. 2.  Since each cause of action

asserted against Owen is asserted against him in his capacity as part-owner, each of these claims

must fail.  Thus, Defendants motion for summary judgment of Counts VI to XV is granted as to

George Owen.

B.  Dram Shop Claims

      Plaintiffs advance two claims under the Dram Shop Act, N.J.S.A. 2A:22A-1, *et seq.,*

failure to maintain a safe environment and serving alcohol to minors. Am. Compl. ¶¶ 101-04.

The operative subsection of the Dram Shop Act, states:

> a. A person who sustains personal injury or property damage as a result of
> the negligent service of alcoholic beverages by a licensed alcoholic
> beverage server may recover damages from a licensed alcoholic beverage
> server only if:
>
> > (1) The server is deemed negligent pursuant to subsection b. of
> > this section; and
> >
> > (2) The injury or damage was proximately caused by the negligent
> > service of alcoholic beverages; and

5

> (3) The injury or damage was a foreseeable consequence of the
> negligent service of alcoholic beverages.

> b. A licensed alcoholic beverage server shall be deemed to have been
> negligent only when the server served a visibly intoxicated person, or
> served a minor, under circumstances where the server knew, or reasonably
> should have known, that the person served was a minor.

N.J.S.A. 2A:22A-5.  Since the statute does not provide a cause of action for failure to maintain a

safe environment under the Dram Shop Act, as to this claim, Defendants' Motion for Summary

Judgment is granted.

As to the second Dram Shop claim, serving alcohol to a minor or to a visibly intoxicated

person, Plaintiffs have stated sufficient facts to create a genuine question of material fact as to

Amentler.[3]  On the date of the party, Amentler was a minor. Supp. Br. 4.  Plaintiffs claim that

Amentler was served alcohol at the party. Amentler T. 50, 3 through 51, 9; Perselay T. 157, 15

through 22.  Plaintiffs also claim that Amentler was raped by Krol. Am. Compl. ¶¶ 30-31.  From

these proofs, a jury could reasonably conclude that Amentler was intoxicated, and that there is a

sufficient nexus between her injury and Defendants' negligent service of alcohol. *See Showalter*

*v. Barilari, Inc.*, 712 A.2d 244, 249-50 (N.J. Super. Ct. App. Div. 1998).

Defendants arguments for summary judgment on this claim are unavailing.  Defendants

argue that Amentler was never served liquor within the meaning of the statute because guests

were free to serve themselves at their leisure. Supp. Br. 21.  However, the phrase "service of

alcoholic beverages" includes instances of self-service when the beverage server makes the

---

[3]

    To the extent that Plaintiffs intended to plead a separate cause of action under the Dram
Shop Act as to Perselay, such cause of action must fail.  Plaintiffs have alleged no facts to
suggest that Perselay was visibly intoxicated, nor have they alleged any injury to Perslay as a
result of being negligently served alcoholic beverages. *See* Opp'n Br. 34-38.

alcohol generally available. *See Mazzacano v. Estate of Kinnerman*, 962 A.2d 1103, 1111 (N.J. 2009). Defendants also argue that there are no facts supporting an allegation that Amentler sustained a personal injury as the result of negligent service of alcoholic beverages. Supp. Br. 21. The Court disagrees. Plaintiffs have alleged that Amentler was raped by Krol. Am. Compl. ¶¶ 30-31. From the circumstances surrounding the alleged rape, including Amentler's status as a minor and her alleged intoxication, a jury could determine that Amentler was susceptible to sexual assault because of Defendants' negligent service of alcohol. *See Showalter*, 712 A.2d at 249-50. Finally, Defendants argue that they are not liable under the Dram Shop Act because they had no reason to believe that Amentler was a minor. Supp. Br. 22. However, it is undisputed that Amentler was a minor. Am. Compl. ¶ 3; Supp. Br. 4. In the absence of proof clearly absolving Defendants of liability, the question of whether Defendants knew or should have known that Amentler was a minor is a question for the jury. *See* Fed. R. Civ. P. 56(a).[4]

C. The Negligent Infliction of Emotional Distress Claims

In their Amended Complaint, Plaintiffs allege that all of the Defendants are liable "for the negligent infliction of emotional distress upon both Plaintiff Amentler and Plaintiff Perselay." Am. Compl. ¶ 70. New Jersey case law recognizes the tort of negligent infliction of emotional distress (NIED) in several contexts. Where a plaintiff suffers emotional harm without physical

---

[4]

Neither the Plaintiffs nor the Defendants address the issue of personal liability. *See generally* Supp. Br.; Opp'n Br. As used in the Dram Shop Act, a "server" is either "a person who is licensed to sell alcoholic beverages pursuant to R.S. 33:1-1 et seq., or who has been issued a permit to sell alcoholic beverages by the Division of Alcoholic Beverage Control in the Department of Law and Public Safety . . . ." N.J.S.A. 2A:22A-3. Additionally, a "person" is "a natural person, . . . partnership, . . . officer or employee of any of them." N.J.S.A. 2A:22A-3. Nothing in the record indicates which Defendants, if any, were licensed or permitted to sell alcoholic beverages on July 4, 2007.

contact, a plaintiff may advance a claim under one of two legal theories: "zone of danger," where a plaintiff's injury is based on his or her reasonable apprehension of danger, and bystander liability, where a plaintiff's injury is based on having observed the death or injury of an intimate associate. *See Jablonowska v. Suther*, 948 A.2d 610, 620 (N.J. 2008). There is also some authority suggesting that, where a plaintiff suffers emotional harm as a result of physical contact, the tort of NIED can be understood as a basic negligence claim resulting in emotional distress. *See Dello Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003); *Lascurain v. City of Newark*, 793 A.2d 731, 746-47 (N.J. Super. Ct. App. Div. 2002). In the instant case, while neither the Amended Complaint nor the Plaintiffs' Brief explicitly state the theory or theories of liability under which Plaintiffs proceed, it is clear from the record as a whole that Perselay alleges bystander liability and Amentler alleges a basic negligence claim. *See Opp'n Br. 20-27.*

### 1. Perselay's Bystander Claim

To state a claim for negligent infliction of emotional distress based on a serious injury to one with whom a plaintiff shared an intimate relationship, the plaintiff must prove: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980). Regarding the fourth element, the plaintiff must produce evidence that the emotional anguish was "sufficiently palpable, severe, or enduring to justify the imposition of liability." *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1129 (N.J. 1989). The adequate demonstration of severe emotional distress is essential because, in circumstances where physical impact is absent, there are constant concerns about the genuineness of each claim. *See*

*id.* at 1128.  On summary judgment, the court may review the evidence of emotional anguish to ensure that the plaintiff met his or her burden of production. *See id.; Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988).

In the instant case, Perselay's NIED claim must fail because Plaintiffs have not produced sufficient evidence of "severe emotional distress."  Plaintiffs allege that Perselay was emotionally distressed as a result of the sexual assault of Amentler. Opp'n Br. at 26.  This type of general allegation of distress, aggravation, embarrassment, or discomfort has repeatedly been held to be insufficient as a matter of law. *See, e.g., Decker*, 561 A.2d at 1129; *Buckley*, 544 A.2d at 864.

2. Amentler's Negligence Claim

In New Jersey, NIED claims are generally pleaded in circumstances where there was no physical injury to the plaintiff. *See, e.g.,Abouzaid v. Mansard Gardens Assoc., LLC*, 23 A.3d 338, 343-44 (N.J. 2011);*Gupta v. Asha Enterprises. L.L.C.*, 27 A.3d 953, 962 (N.J. Super. Ct. App. Div. 2011).  However, there is authority to suggest that NIED claims based on actual physical injury are cognizable. *See Dello Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003); *Lascurian v. City of Newark*, 793 A.2d 731, 746-47 (N.J. Super. Ct. App. Div. 2002).

Without reaching the issue of whether NIED claims based on physical injury are cognizable, it is clear that Amentler's claims, if allowed, would be barred by the exclusivity provision of the Dram Shop Act.  Amentler alleges that Defendants breached their duty to Amentler by negligently allowing Amentler, a minor to serve herself alcohol. Opp'n Br. 24-25. According to the Dram Shop Act's exclusivity provision, the Dram Shop Act is "the exclusive civil remedy for personal injury . . . resulting from the negligent service of alcoholic beverages by

9

a licensed alcoholic beverage server. N.J.S.A. 2A:22A-4; *see also Bauer v. Nesbitt*, 969 A.2d 1122, 1130-31 (N.J. 2009). Additionally, the Dram Shop Act allows for recovery of emotional distress. *See* N.J.S.A. § 2A:22A-6. Since Amentler's NIED claim, if allowed, would be foreclosed by the exclusivity provision of the Dram Shop Act, Defendants' Motion for Summary Judgment as to this issue is granted.

D.  The Retaliation Claims

Plaintiffs allege three causes of action based on Perselay's termination: (1) CEPA retaliation, (2) NJLAD retaliation, and (3) Title VII retaliation.

1.  Amentler's Retaliation Claims

As to Amentler, all of these retaliation claims must fail because Amentler was never an employee of any of the Defendants. All three of the causes of action alleged by Amentler concern an employer/employee relationship. *See D'Annunzio v. Prudential Ins. Co. of America*, 927 A.2d 113, 118 (N.J. 2007) (CEPA claims); *Pukowsky v. Caruso*, 711 A.2d 398, 405 (N.J. Super. Ct. App. Div. 1998) (NJLAD claims); *Kahn v. American Heritage Life Ins. Co.*, 324 F.Supp.2d 652, 655 (E.D. Pa. 2004) (Title VII claims). While Amentler alleges she attended the party for the purpose of assisting Perselay and entertaining the guests, Am. Compl. ¶ 15, Plaintiffs have produced no evidence that Amentler was either hired to perform these services or compensated for them. *See generally* Am. Compl.; Opp'n Br. In the absence of an employer/employee relationship, Defendants are granted summary judgment on each of Amentler's retaliation claims.

2.  Perselay's CEPA Retaliation Claim

Conscientious Employer Protection Act (CEPA), N.J.S.A. 34:19-1 *et seq.*, retaliation

claims are analyzed under the traditional burden-shifting approach stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Massarano v. N.J. Transit*, 948 A.2d 653, 664 (N.J. Super. Ct. App. Div. 2008); *Zappasodi v. State, Dep't of Corr.*, 761 A.2d 96, 100 (N.J. Super. Ct. App. Div. 2000). Under the *McDonnell Douglas* framework: first, a plaintiff must establish a prima facie case; second, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action; and finally, the burden of production shifts back to the plaintiff to establish that the employer's proffered reasons were mere pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802-04. To establish a prima facie case of CEPA retaliation, a plaintiff must prove four separate elements. *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div .1999). First, the plaintiff must prove "that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law." *Id.* (citing *Falco v. Cmty. Med. Ctr.*, 686 A.2d 1212 (N.J. Super. Ct. App. Div. 1997), *certif. denied*, 709 A.2d 798 (1998)). Second, the plaintiff must prove that "he or she performed a whistle-blowing activity." *Id.; see also* N.J.S.A. 34:19-3(a), (c)(1)-(3) (describing "whistle-blowing activity"). Third, the plaintiff must prove that his or her employer took an adverse employment action against him or her. *Kolb*, 727 A.2d at 530. Finally, the plaintiff must prove the existence of "a causal connection . . . between the whistle-blowing activity and the adverse employment action." *Id.*

Both Plaintiffs and Defendants have met their respective burdens within the *McDonnell Douglas* framework. First, Perselay adduced sufficient proofs to establish a prima facie case. Regarding the first prong, it is clear from the pleadings that Perselay believed Defendants were violating the NJLAD's prohibition against sexual harassment, and that these beliefs were

11

reasonable. *See* Am. Compl. ¶¶ 20, 27, 43-45, 86-88; Opp'n Br. 16-17, 30-32. Regarding the

second prong, Perselay has provided sufficient proof of disclosure of the underlying conduct to

his supervisors during the July 6, 2007 meeting between Perselay and all of the individual

Defendants. *See* Opp'n Br. 40; Krol T. 86, 23 through 89, 19; Owen T. 94, 10 through 97, 12 and

99, 12 through 100, 20; *see also Donelson v. DuPont Chambers Works*, 20 A.3d 384, 391 (N.J.

2011). By filing the complaint in the instant action, Perselay performed a separate, additional

whistle-blowing activity. *See* N.J.S.A. 34:19-3(a); *Hester v. Parker*, 2011 WL 1404886, at *6

(N.J. Super. Ct. App. Div. Apr. 14, 2011) (finding that filing of a civil complaint meets the

requirements of "whistle-blowing activity" under the CEPA). Regarding the third prong,

Perselay alleges that Defendants fired Perselay on January 31, 2008. Am. Compl. ¶ 45. Finally,

regarding the causal connection between the second and third prongs, Perselay adduces both

direct and circumstantial evidence of causation, citing the temporal proximity between the

protected activity and the adverse employment consequence, the inconsistent reasons provided

for the adverse employment consequence, and the admission by some of the Defendants that

Perselay was terminated for having filed the lawsuit. *Id.* ¶¶ 44-45; Donzella T. 39, 6 through

41,1; Krol T. 101, 7 through 105, 19; Owen T. 38, 1 through 20 and 133, 5 through 134, 20.

        Second, Defendants may have met their burden under the second phase of the *McDonnell*

*Douglas* framework by articulating non-discriminatory reasons for the adverse employment

action. Supp. Br. 8. Defendants claim that Perselay was fired for his poor work ethic, his failure

to hire a sous chef, and his inability to work with two of the Defendants. *Id.* Finally, Perselay

met his burden to produce evidence that Defendants' proffered reasons, including Perselay's

alleged failure to hire a sous chef, were mere pretext for intentional discrimination. Am. Compl.

12

¶ 44-45; *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000). Since both parties met their burdens under the CEPA retaliation claim and there are outstanding questions of material fact, Defendants motion for summary judgment of Perselay's CEPA retaliation claim is denied.

    3. Perselay's NJLAD Retaliation Claim

    Under CEPA's waiver provision, "the institution of an action in accordance with [the CEPA] shall be deemed a waiver of the rights and remedies available under . . . State law, rule or regulation or under the common law." N.J.S.A. 34:19-8. Courts that have interpreted this provision have held that "the waiver provision applies only to those causes of action that require a finding of retaliatory conduct that is actionable under CEPA. The waiver exception does not apply to those causes of action that are substantially independent of the CEPA claim." *Skoorka v. Kean University*, 2007 WL 2460160, at *12 (N.J. Super. Ct. App. Div. 2007, Aug. 30, 2007) (quoting *Young v. Schering Corp.*, 660 A.2d 1153, 1160 (1995) (internal quotations omitted)).

    Perselay's CEPA claim and Perselay's NJLAD claim require identical proofs; thus, Perselay's NJLAD claim is barred by operation of law. As stated above, the prima facie case for a CEPA claim includes the plaintiff's reasonable belief that his or her employer broke the law, whistle-blowing activity, adverse employment action, and a causal connection. *Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div .1999). To establish a prima facie case of NJLAD retaliation, a plaintiff must show that: "(1) [he or she] engaged in a protected activity known by the employer; (2) thereafter [his or her] employer unlawfully retaliated against [him or her]; and (3) [his or her] participation in the protected activity caused the retaliation." *Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 889 (N.J. 2010) (quoting *Tartaglia v. UBS PaineWebber, Inc.*, 961

13

A.2d 1167 (2008) (internal quotations omitted)).  Under both Perselay's CEPA claim and his

NJLAD claim, Plaintiffs allege that Perselay was fired in retaliation for filing a civil complaint.

Opp'n Br. 39-41.  The only difference between the proofs for the two claims is that Persalay's

CEPA claim includes an additional requirement that plaintiff's belief that his or her employer

broke the law is reasonable. *See Kolb*, 727 A.2d at 530.  Since Perselay's NJLAD claim is not

substantially independent of Perselay's CEPA claim, Defendants are entitled to summary

judgment on Perselay's NJLAD retaliation claim.

    4. <u>Perselay's Title VII Retaliation Claim</u>

      Title VII makes it unlawful for "an employer to discriminate against any of [their]

employees . . . because [the employee] opposed any practice made an unlawful employment

practice by this subchapter, or because [the employee] has made a charge . . . ." 42 U.S.C. §

2000e-3(a).  Like NJLAD retaliation claims, Title VII retaliation claims follow the burden

shifting framework outlined in *McDonnell Douglas. See* 411 U.S. 792, 803–05 (1973); *see also*

*Taylor v. Amcor Flexibles Inc.*, No. 07-3477-NLH, 2011 WL 2607152, at *5 (D.N.J. June 29,

2011).  Under the first step of the framework, the plaintiff must establish a prima facie case.

*McDonnell Douglas*, 411 U.S. 802-04.  To establish a prima facie case of Title VII retaliation, an

employee must show "(1) that he or she engaged in protected activity, (2) that he or she was

subjected to an adverse action by the employer, and (3) the existence of a causal link between the

employee's protected activity and the purportedly adverse action." *Wood v. Univ. of Pittsburgh*,

395 F. App'x 810, 815 (3d Cir. 2010) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d

Cir. 2007)).  Notably, protected activity includes filing a complaint for discrimination. *See Moore*

*v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006).  In the second and third stages of the

framework, the defendant must articulate a non-discriminatory reason for the adverse

employment action, then the plaintiff must proffer evidence that the plaintiffs non-discriminatory

explanation is mere pretext. *McDonnell Douglas*, 411 U.S. at 802-04.  Plaintiffs allege that,

within the meaning of Title VII, each and every Defendant retaliated against both Perselay and

Amentler. Am. Compl. ¶¶ 105-07.

      As to Perselay's claim against the Tavern, Plaintiffs have stated sufficient facts to create a

genuine question of material fact.  Perselay initiated this civil action prior to his termination.

*See* Am. Compl. ¶¶ 44-45. In Plaintiffs' original Complaint, Perselay alleged activity that Title

VII prohibits, including quid pro quo sexual harassment and sexually hostile work environment.

*See* Compl. ¶¶ 72-86.  Although the original Complaint did not allege any violations of Title VII

per se, initiating the complaint was "protected activity" within the meaning of the statute. *See*

*Moore,* 461 F.3d at 343; *see also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d

Cir. 1996) (finding that the question of whether a particular activity is "protected" is a question

of law).  Furthermore, and as explained more fully in the Court's discussion of the CEPA

retaliation claim, Perselay has established a causal connection between filing the Complaint and

his termination. Am. Compl. ¶¶ 44-45; Donzella T. 39, 6 through 41, 1; Krol T. 101, 7 through

105, 19; Owen T. 38, 1 through 20 and 133, 5 through 134, 20.  Finally, for the same reasons

discussed in the Court's analysis of the CEPA violation, both parties have met their respective

burdens in the second and third stages of the *McDonnell Douglas* framework.

      As to Plaintiffs' allegations that all of the Defendants are individually liable under Title

VII, these charges are barred by operation of law.  Individual employees, even individual

employees who are part-owners, cannot be held liable under Title VII. *Sheridan v. E.I. DuPont*

*de Nemours*, 100 F.3d 1061, 1077-78 (3d Cir. 1996). Thus, all Defendants other than the Tavern
are entitled to summary judgment on all of these claims.

## E.  The Remaining NJLAD Claims

Beyond the NJLAD retaliation count, Plaintiffs allege three additional NJLAD counts
against each of the Defendants: (1) sexually hostile work environment, (2) quid pro quo sexual
harassment, and (3) aiding and abetting liability.

### 1.  Amentler's NJLAD Claims

As to Amentler, each of these NJLAD counts must fail.  "[T]he [NJLAD] was intended to
prohibit discrimination in the context of an employer/employee relationship." *Pukowsky v.
Caruso*, 711 A.2d 398, 405 (N.J. Super. Ct. App. Div. 1998); *but see Rubin v. Chilton*, 819 A.2d
22, 25 (N.J. Super. Ct. App. Div. 2003) (holding that NJLAD claims under N.J.S.A. 10:5-12(*l*),
which deals with contracts and sales, arise exclusively in non-employee contexts).
"Correspondingly, the lack of an employment relationship between the plaintiff and the
defendant will preclude liability." *Thomas v. Cnty. of Camden*, 902 A.2d 327, 334 (N.J. Super.
Ct. App. Div. 2006).  Since Amentler was never employed by any of the Defendants, *see supra*
Part III(D)(1), Defendants are granted summary judgment Amentler's NJLAD claims.

### 2.  Perselay's Standing to Pursue Claims Based on Amentler's Injury

As to Perselay, all of these counts hinge on whether Perselay has standing to pursue
NJLAD claims based on the alleged harassment of Amentler.  According to the NJLAD, a
lawsuit may be brought by "[a]ny person claiming to be aggrieved by an unlawful employment
practice or unlawful discrimination." N.J.S.A. 10:5-13.  Courts have interpreted this language as
permitting third-party plaintiffs to advance claims based on indirect discrimination. *See Anjelino*

16

*v. New York Times Co.*, 200 F.3d 73, 92 (3d. Cir. 1999); *Bubbles N' Bows, LLC v. Fey Publishing Co.*, No. 06-5391 (FLW), 2007 WL 2406980, at *5 (D.N.J. Aug. 20, 2007); *Berner v. Enclave Condominium Assoc., Inc.* 730 A.2d 877, 880 (N.J. Super. Ct. App. Div. 1999). However, a third-party plaintiff may not assert a cause of action based on any derivative injuries. *See e.g., L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ.*, 886 A.2d 1090, 1111 (N.J. Super. Ct. App. Div. 2005); *Catalane v. Gilian Instrument Corp.*, 638 A.2d 1341, 1353 (N.J. Super. Ct. App. Div. 1994).

To distinguish between acceptable indirect injuries and unacceptable derivative injuries, courts in the Third Circuit have applied a modified Article III standing inquiry. *See Anjelino*, 200 F.3d at 88-92; *Bubbles N' Bows,* 2007 WL 2406980, at *4. Under Article III of the U.S. Constitution, "to establish standing, a party must show that (1) he suffered some actual or threatened injury as a result of illegal conduct by the defendant; (2) the injury can be fairly traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision." *Bubbles N' Bows*, 2007 WL 2406980, at *4 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). Courts have modified this inquiry by further requiring that "the alleged injury falls within the 'zone of interests' that the statute . . . was designed to protect," and that the third-party plaintiff "assert[] his own legal rights and interests, as opposed to those of third parties." *Anjelino*, 200 F.3d at 88. Since each of Perselay's NJLAD claims involves different facts and, in some cases, different provisions of the NJLAD, this third-party standing inquiry applies to each claim.

3. Perselay's Sexually Hostile Work Environment Claim

To state a claim for sexually hostile work environment under the NJLAD, the plaintiff

must prove "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct

that would not have occurred but for that protected status; and (3) that [the conduct] was severe

or pervasive enough to alter the conditions of employment." *Victor v. State*, 4 A.3d 126, 141

(2010); *see also* N.J.S.A. 10:5-12(a). Perselay's claim for sexually hostile work environment is

based entirely on Krol's alleged rape of Amentler and Perselay's attendant feelings about the

rape.

Setting aside the complicated question of whether Perselay is a member of a protected

class,[5] it is clear that Perselay does not have standing to pursue a sexually hostile work

environment claim based on the sexual assault of Amentler. The standard for sexually hostile

workplace claims under the NJLAD was first set forth in *Lehmann v. Toys 'R' Us.* 626 A.2d 445

(N.J. 1993). As that court makes clear, the "defining characteristic" of a sexually hostile work

environment claim "is that the harassment occurs because of the victim's sex." *Id.* at 453; *see*

*also Herman v. Coastal Corp*, 791 A.2d 238, 249 (N.J. Super. Ct. App. Div. 2002) (holding that

the employee's gender is the defining element of a sexually hostile work environment claim).

Notably, *Lehmann* goes on to explain the type of third-party injuries that are cognizable under

this standard:

> The plaintiff's work environment is affected not only by conduct directed at
> herself but also by the treatment of others. A woman's perception that her work
> environment is hostile to women will obviously be reinforced if she witnesses the

---

[5]

At present, it is unclear whether the first prong of the prima facie case for sexually hostile
work environment requires that the plaintiff *actually* be a member of a protected class or whether
it sufficient that plaintiff is the "functional equivalent" of a member of a protected class.
*Compare Victor*, 4 A.3d at 141 (pronouncing the standard without clearly altering case law) *with*
*Berner v. Enclave Condominium Assoc., Inc.* 730 A.2d 877, 881 (N.J. Super. Ct. App. Div. 1999)
(holding that "functional equivalency" is sufficient to prove discrimination under the NJLAD).

> harassment of other female workers. Therefore, we hold that the plaintiff need not
> personally have been the target of each or any instance of offensive or harassing
> conduct. Evidence of sexual harassment directed at other women is relevant to
> both the character of the work environment and its effects on the complainant.

*Lehmann*, 626 A.2d at 457. From this example, it is clear that sexually hostile work environment

claims are designed to prevent gender-based discrimination. In the instant case, Perselay is not

claiming gender-based discrimination. Rather, Perselay is claiming a personal, derivative injury

based on his distress over Krol's alleged rape of Amentler. Am. Compl. ¶¶ 74-81; Opp'n Br. 16-

18; *see also L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ.*, 886 A.2d 1090, 1111

(N.J. Super. Ct. App. Div. 2005). This type of injury is not protected by the NJLAD sexually

hostile work environment claim, and Plaintiffs motion for summary judgment on this claim is

granted as to all parties.

### 4. Perselay's Quid Pro Quo Claim

A claim for quid pro quo sexual harassment under the NJLAD "occurs when an employer

attempts to make an employee's submission to sexual demands a condition of his or her

employment." *Lehmann*, 626 A.2d at 452; *see also J.T. 's Tire Service, Inc. v. United Rentals

North Am., Inc.*, 985 A.2d 211, 215 (N.J. Super. Ct. App. Div. 2010). Importantly, "the plaintiff

must show that his or her response to unwelcome advances was subsequently used as a basis for

a decision about [a substantial employment decision]." *Farrell v. Planters Lifesavers Co.*, 206

F.3d 271, 282 (3d Cir. 2000) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d

Cir. 1997)).

Perselay's theory of quid pro quo sexual harassment is that Amentler's submission to

sexual demands was a condition of Perselay's employment. Am. Compl. ¶ 87; Opp'n Br. 32.

Embedded within this theory is the argument that Perselay has standing to pursue NJLAD claims based on the alleged harassment of Amentler. *See* Am. Compl. ¶ 87; Opp'n Br. 32.  As proof of this claim, Perselay points to the alleged rape of Amentler, Amentler's belief that the refusal of the sexual demand would have threatened Perselay's position, Defendants' repeated efforts to prevent Perselay from taking legal action, and Perselay's ultimate firing. Am. Compl. ¶¶ 20, 27, 43-45, 86-88; Opp'n Br. 16-17, 30-32.

As a preliminary matter, Perselay has standing to pursue a quid pro quo sexual harassment claim premised upon sexual demands made upon Amentler, his live-in girlfriend. Perselay meets the base requirements of Article III standing by identifying an injury-in-fact (i.e., his termination), claiming that this injury was caused by Amentler's submission to the sexual assault, and advancing a claim, quid pro quo sexual harassment, that is redressable. *See, e.g., Bubbles N' Bows, LLC v. Fey Publishing Co.*, No. 06-5391 (FLW), 2007 WL 2406980, at *6 (D.N.J. Aug. 20, 2007).  Furthermore, Perselay is seeking recovery based on his own employment interest instead of any derivative injury experienced by Amentler. Opp'n Br. 32. While this is certainly not a typical fact pattern, at its core, Perselay's claim seeks redress against a supervisor for using his position to a exploit a subordinate for sexual benefit. *See* Opp'n Br. 17, 32. This is the type of interest that the quid pro quo sexual harassment claim was designed to protect. *Cf. Connolly v. Burger King Corp.*, 703 A.2d 941, 942 (N.J. Super. App. Div. 1997).

Ultimately, Perselay has stated a prima facie case for quid pro quo sexual harassment. Perselay has presented clear, genuine issues of fact as to both the sexual demand of Amentler and the adverse employment action. *See* Opp'n Br. 32. The much closer question is the causal connection between the two.

The Third Circuit authorizes a broad analysis of the causal link between the sexual demands and subsequent employment decision. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283-84 (3d Cir. 2000). Additionally, "[t]he court must draw inferences in favor of the non-moving party, and consider circumstantial evidence." *Schepis v. Raylon Corp.*, No. 03-cv-05970, 2006 WL 2803050, at *2 (E.D. Pa. Sept. 26, 2006) (citing *Farrell*, 206 F.3d at 283). While the evidence should be looked at as a whole, certain varieties of circumstantial evidence may weigh in the non-moving party's favor, including a pattern of antagonism, the temporal proximity between the sexual demand and the adverse employment action, and a showing that the employer provided inconsistent reasons for terminating the employee. *Farrell*, 206 F.3d at 279-81.

Taken as a whole, Perselay's evidence establishes the threshold causal relationship. The alleged assault occurred on July 4, 2007. On January 25, 2008, Defendants were served with Plaintiffs' Complaint. On January 31, 2008, Defendants terminated Perselay. While the temporal proximity between Defendants' receipt of the complaint and Perselay's termination could be viewed as evidence of retaliation for having filed a lawsuit, it also weighs in favor of the causal link between the alleged harassment and the subsequent employment decision. A reasonable factfinder could infer that the temporal proximity between receipt of the Complaint and termination of the employee was the validity of the underlying suit. Additionally, Defendants have provided inconsistent reasons for the termination. *See* Donzella T. 39, 6 through 41, 1; Owen T. 38, 1 through 20 and 133, 5 through 134, 20; Krol T. 101, 7 through 105, 19. Viewed in the light most favorable to the non-movant, this evidence is sufficient to suggest the necessary causal link.

Finally, regarding liability, Perselay's claim for quid pro quo sexual harassment is only

21

cognizable as to the Tavern.  NJLAD harassment claims are only actionable against an

"employer." N.J.S.A. 10:5-12(a); *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004).  Perselay

claims that Donzella, Krol, and Stiner are "employers" within the meaning of the NJLAD by

virtue of their part ownership of the Tavern.  This argument is untenable. *See Tarr*, 853 A.2d at

929 (finding that the owner of a company that employed the plaintiff was not an "employer"

within the meaning N.J.S.A. 10:5-5(e)).  Donzella, Krol, and Stiner are not "employers" within

the meaning of the NJLAD, and thus summary judgment for this claim must be granted as to

these Defendants.

   5.  Perselay's Aiding and Abetting Claim

   N.J.S.A. 10:5-12(e) prohibits any person from aiding or abetting another in committing

any acts prohibited by the NJLAD. *Tarr*, 853 A.2d at 929.  "This provision is designed to impose

liability upon a party, other than the employer, for aiding and abetting the unlawful acts of the

employer." *Colello v. Bayshore Community Health Svcs.*, 2010 WL 1753164, at *14 (N.J. Super.

Ct. App. Div. Apr. 28, 2010) (citing *Tarr*, 853 A.2d at 928).  Notably, a claim for aiding and

abetting is only cognizable against those who assist or encourage others in committing acts

prohibited by the NJLAD. *Id.*  A party cannot aid and abet its own unlawful conduct. *Id.*

   To establish aiding and abetting liability, a plaintiff must show that: (1) the defendant

aided a party who performed a wrongful act that caused an injury; (2) the defendant was

"generally aware of his role as part of an overall illegal or tortious activity at the time he

provided assistance;" and (3) defendant knowingly and substantially assisted the principle

violation. *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004); *see also Sepulveda v. Borne Holding

Co., Inc.*, 2010 WL 5345127, at *7 (N.J. Super. Ct. App. Div. 2010).  Amentler has alleged two

22

wrongful acts from which aiding and abetting liability could potentially flow: the alleged rape of Amentler and Perselay's termination. Am. Compl. ¶¶ 30-31, 44-45.

As to the alleged rape, Perselay's claim fails as to all Defendants. The Tavern was Perselay's employer and is therefore not subject to aiding and abetting liability. *See Colello*, 2010 WL 1753164, at *14. Krol, the alleged rapist, is incapable of aiding and abetting his own conduct. *Id.* The other remaining Defendants, Donzella and Stiner, all claim that they were not aware of the alleged rape until after it happened. Supp. Br. 19. Perselay does not challenge this contention. Opp'n Br. 33. Rather, Perselay argues that the rape was "foreseeable." *Id.* This is insufficient. *See Tarr*, 853 A.2d at 929 (N.J. 2004). The prima facie case for aiding and abetting liability clearly requires more than negligence or recklessness; it requires "knowing" assistance. *Id.*

As to the termination, Perselay's claim is barred by operation of law. The Tavern is insulated from liability by virtue of being Perselay's employer. *See Colello*, 2010 WL 1753164, at *14. The other Defendants, having collectively participated in the decision to fire Perselay, are immune from suit by virtue of having committed the alleged unlawful conduct. *See id.*; *Colello*, 2010 WL 1753164, at *14.

F. Failure to Maintain a Safe Workplace

Plaintiffs allege that "Defendants failed to maintain a safe workplace, both at Fox [and] Hound and at the site of the July 4th, 2007 Fox [and] Hound business event." Am. Compl. ¶ 100. Plaintiffs have cited no law, and almost no facts, to support this allegation. *Id.*; Opp'n Br. 34. To the extent that Plaintiffs are alleging non-compliance with the Occupational Safety and Health Act, 29 U.S.C.A. § 651 *et seq.*, for failure to maintain a safe workplace, "non-compliance with

23

[OSHA] standards does not alone create a viable cause of action." *Costa v. Gaccione*, 975 A.2d

451, 457 (N.J. Super. Ct. App. Div. 2009). In the absence of a cause of action, this claim must

fail, and Defendants' Motion for Summary Judgment is granted as to this claim.

## IV

For the reasons discussed above, Plaintiffs' motions for summary judgment are granted in

part and denied in part. An appropriate form of order is filed herewith.


_____

PETER G. SHERIDAN, U.S.D.J.


January 3, 2012