*Law Offices Of*
**Brian M. Murphy**
50 Chestnut Ridge Road, Suite 115
Montvale, New Jersey 07645
(201) 930-9799
Fax (201) 930-9191

New York Office:
One Battery Park Plaza
28th Floor
New York, NY 10004-1479
(212) 532-4826

**Brian M. Murphy**
Member NJ & NY Bars
bmurphy500@msn.com

**Patrick M. Little**
pmlittle@optonline.net

**HAND DELIVERED**
July 23, 2012

Honorable Peter G. Sheridan
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 E. State Street, Room 7000
Trenton, NJ 08608

Honorable Tonianne J. Bongiovanni
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 E. State Street, Room 6052
Trenton, NJ 08608

R E C E I V E D

JUL 2 5 2012

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Re:    Re: Amentler/Perselay v. 69 Main Street, et als
       Civil Action No.:  3:08-CV-0351
       Our File No.:  D-531

Dear Judge Sheridan and Bongiovanni:

Enclosed please find trial brief filed on behalf of defendant, 69 Main Street, LLC, regarding the above-captioned matter which is scheduled for trial on or about August 2.

Please note that said brief addresses the allegations regarding the Dram Shop claims set forth in Counts XII and XIII of the amended complaint, and also the claims for economic damages by plaintiff, Michael Perselay.

This defendant respectfully adopts the contentions set forth in the trial briefs submitted by other defense counsel on other issues, including plaintiffs' claims for wrongful termination.

The undersigned also specifically reserves the arguments expressed in the *in limine* motions, previously filed.

July 23, 2012
Page 2 of 2

Thank you for your consideration.

Very truly yours,

Patrick M. Little

dmb

Enclosure

Copy To: John J. Jacko, III (Hand Delivered)
         James Passantino, Esq. (Hand Delivered)
         Matthew M. McDowell, Esq. (Hand Delivered)
         Michael K. Fielo, Esq. (Hand Delivered)
         Richard W. Wedinger, Esq. (Hand Delivered)
         Robert B. Hille, Esq. (Hand Delivered)

**LAW OFFICES OF BRIAN M. MURPHY**
**50 CHESTNUT RIDGE ROAD**
**SUITE 115**
**MONTVALE, NJ 07645**
**(201) 930-9799**
**FAX (201) 930-9191**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDANA AMENTLER AND MICHAEL PERSELAY, | CIVIL ACTION NO. 3:08-CV-0351-(PGS) TSB |
| Plaintiffs, | |
| vs. | |
| 69 MAIN STREET, LLC d/b/a FOX AND HOUND TAVERN, GEORGE P. OWEN, TOM J. STINER, GEORGE A. DONZELLA, and JEFFREY J. KROL, | |
| Defendants. | |

## TRIAL BRIEF

LAW OFFICES OF BRIAN M. MURPHY
Attorney for Defendants
69 Main Street, LLC, George Donzella,
and Thomas Stiner

ON THE BRIEF:
Patrick M. Little

## DRAM SHOP CLAIMS/COUNTS XII AND XIII

**A.** **The party did not take the place at the "licensed premises" of 69 Main Street, LLC and therefore the Dram Shop claims should be dismissed.**

Plaintiff, Edana Amentler, premises the claims of Count XIII on N.J.S.A.

2A:22A-1, *et seq.*, commonly known as the Dram Shop Act and more formally entitled

New Jersey Licensed Alcoholic Beverage Server Act. More specifically, N.J.S.A.

2A:22A-5 sets forth the conditions for recovery of damages.

Said statute begins: "A person who sustains personal injury or property damage

as a result of the negligent service of alcoholic beverages by a licensed beverage server

may recover damages from a licensed alcoholic beverage server only if . . .." Plaintiff, of

course, has the burden to prove liability under this statute. Such proof would necessarily

begin with evidence that the defendant was a licensed alcoholic beverage server under the

statute.

There is no dispute that there was alcohol at the party, and Judge Sheridan has

ruled that a guest's accessibility to self-service constitutes "service of alcoholic

beverages." However, the alcohol was not made available by this defendant, the Tavern.

Reference is made to the Alcoholic Beverage Control Handbook for Retail

Licenses by the State of New Jersey, Department of Law & Public Safety, Office of the

Attorney General, Division of Alcoholic Beverage Control. In the last paragraph on page

41, "licensed premises" is described as "that portion of the licensee's property on which

or from which alcoholic beverages may be sold, served or stored," and "is defined by the

licensee at the time an initial license application is filed . . . ." *See also,* N.J.S.A. 33:1-12,

and *Margate Civic Association v. Board of Commissioners of the City of Margate*, 332

*A.2d* 215, 132 *N.J. Super.* 58 (App. Div. 1975).

The license renewal application for 2007-2008 shows one location for the operation of the business, 69 Main Street, Lebanon, New Jersey. (Exhibit A, paragraphs 2.2, 2.5, and 3.2)

As noted on page 13 of the handbook, a licensed server may serve alcohol away from the licensed premises, but only if it has a Special Permit to Cater from the Licensing Bureau of the Division of Alcoholic Beverage Control. (See "Catering.") Again, if would be the plaintiff's burden to prove that the Tavern obtained such a permit. It is respectfully submitted that such proof will not be forthcoming because in fact, no such permit was obtained.

This was a private party, hosted by George Donzella and George Owen at their home. The guests included the staff and regular customers of the Fox and Hound because these were the people that Donzella and Owen had befriended. The home was off the licensed premises and no one in management attempted to secure an off-premise permit.

The Licensed Alcoholic Beverage Server Act does not apply because the Tavern was not the host. Any and all claims against the Tavern should be dismissed because there is no proof to bring it within the exclusive remedy of N.J.S.A. 2A:22A-5.


**B.** **The Dram Shop claims should be dismissed because there is no reliable evidence that Edana Amentler was intoxicated.**

Plaintiff has adduced no evidence that she was intoxicated at the time of the alleged rape other than her own, self-serving declaration long afterward. As noted otherwise herein, there has been no deposition testimony from any witnesses that Amentler looked intoxicated. There was no statement taken by the Prosecutor's office

that Amentler looked intoxicated. Even plaintiff Michael Perselay did not testify that Amentler looked intoxicated.

Perselay said he was angry with his girlfriend when she came out of the bathroom because he thought she had cheated on him. He was not upset because he thought she was drunk. He was angry with her throughout the trip back to her parents' house. He offered no testimony that he attributed any of her behavior that day to a state of intoxication.

As his boyfriend, he might have been looking for some sign of intoxication so he could find an excuse for her cheating on him. And if he did believe she had been raped, he might have been looking for some sign of intoxication so he could forgive her for not crying out for help in a house full of people. But there is no such testimony.

There was no testimony from either Amentler or Perselay that she was sick to her stomach that night, or had a hangover the next day. She never uttered any objection to being delivered to her parents' house where she might have been rebuked for being intoxicated and underage.

We have no report from an expert opining that Amentler would most likely have been intoxicated at a particular point in the day.

All plaintiff has produced is her own statement that she was drunk and that her intoxication led to the attack.

**C.      Defendants did not know Amentler was a minor and there is no evidence that they should have known so.**

There has been no proof adduced during discovery, and none is anticipated at trial, that any of the defendants knew Amentler's date of birth, or actual age at the time of the party.

Plaintiffs cannot prove by facts or inference that defendants should have known that Amentler was a minor at the time of the party. Rather, evidence will be elicited at trial that representations by plaintiff Perselay and other circumstances would in fact lead a reasonable person to believe that Amentler was old enough to consume alcohol at and around the time of the party.

**D.     Assuming Amentler was intoxicated, there is no proof that such intoxication was the proximate cause of any damages.**

Amentler alleges she was attacked by defendant Krol but does not allege he was intoxicated. Although she claims that she herself was intoxicated, she said the alcohol only had a "hazing effect" on her memory. She denied that alcohol affected her behavior at the party so that Krol might have thought she was sexually available. She insists that she tried to persuade Krol to cease his sexual advances, and denies that her ability to communicate her opposition was impaired in any way by alcohol consumption.

Perhaps most importantly, she testified at her deposition that he could have cried out or tried more forcefully to physically remove Krol from her, but chose not to.

Amentler has offered that the consumption of alcohol may have affected her judgment. People exercise their judgment every day. Some decisions are rewarded and some regretted. Defendants maintain that only an expert can testify as to how the amount of alcohol was likely to have affected Amentler, within a reasonably degree of scientific probability. Plaintiff has no such expert.

Because alcohol was not a proximate cause of the incident, the Dram Shop claims must be dismissed.

## ECONOMIC DAMAGES CLAIMED BY PERSELAY

### A.  Plaintiff, Michael Perselay's Claims For Back Pay

Front pay is limited form of lost future earnings.  Front pay may be awarded for only a reasonable future period required for the plaintiff to establish his or her rightful place in the job market.  *Goss v. Exxon Office Sys. Co.*, 747 Fed. 2nd 885, 889, 90 3rd Circuit (1984).  A plaintiff cannot maintain a claim for front pay damages, as a matter of law, where he has failed to set forth evidence that his ability to obtain comparable employment in the future has been undermined.  *Preston v. Claridge Hotel and Casino*, 231 *N.J. Super. 81, 88* (App. Div. 1989).  Holding that the standard for receiving front pay damages, is whether the "plaintiff" would obtain a salary equivalent to that which she had in receiving. . . prior to her termination."

In the case at hand, the plaintiff, Michael Perselay, by his own testimony, obtained employment three weeks after his termination from Fox and Hound Tavern for essentially the same pay and benefits.  He maintained that employment for approximately fourteen (14) months, clearly establishing that his ability to obtain comparable employment was not undermined by any of the actions of the defendants in this case

Front pay may only be awarded for a reasonable period required for the victim to establish his rightful place in the job market.  The plaintiff bears the burden of proof of eligibility of front pay.  See *EG Fashauer v. New Jersey Transit*, 7 Federal 3rd 1269, 1288 3rd Circuit (1995).  Plaintiff has the burden of proving future loss of earnings due to

diminished earning capacity. *Grass v. West New York Board of Education*, 364 *N.J. Super.* 109, 126-27 (App. Div. 2003).

In the present case, not only does plaintiff, Michael Perselay's job history preclude any allegation of entitlement to front pay, but plaintiff has failed to provide an expert report demonstrating the plaintiff's diminished earning capacity. The New Jersey Appellate Division has affirmed that in NJLAD claims, the plaintiff bears the burden of proving front pay, and must present expert evidence demonstrating a diminished earning capacity. In order for alleged lost future earnings to be included in a damages recovery, the plaintiff must prove both one, the reasonable probability that his injury will impair his future earning capacity, and two, that the quantum of diminishment can reasonably be determined. *Raspa v. Office of Gloucester County Sheriff*, 191 *N.J.* 323, (2007), citing *Frugis v. Bracigliano*, 177 N.J. 250, 285 (2003). Evidence of plaintiff's inability to obtain other employment, and the likelihood of his obtaining employment is required. *Dombrowski v. Atlantic City*, 308 *N.J. Super.* 459, 469 (App. Div. 1998).

It has been well established that the Courts have declined to allow front pay damages where a plaintiff has obtained employment similar to that previously held. *See Weiss v. Parker Hannifan Corp.*, 747 *Fed. Supp. at* 1135, District of New Jersey (1990) (denying front pay because the plaintiff had obtained a position in job market "roughly equal to where he had been before." Based upon the facts of this case, supported by the plaintiff's own deposition testimony, plaintiff, Michael Perselay is not entitled to front pay damages.

Plaintiff, Michael Perselay, not only has failed to provide expert evidence demonstrating a diminished earning capacity, but he obtained comparable employment at

roughly equal to the pay he is receiving from the Fox and Hound Tavern a mere three weeks after his termination, and held that position for over fourteen (14) months. Clearly, plaintiff, Michael Perselay, cannot establish that any actions of the defendants impaired his future earning capacity if he was able to obtain comparable employment in a mere three weeks. As such, plaintiff, Michael Perselay, should be precluded from alleging front pay as a measure for the allegations remaining in his Complaint at the time of the trial.

### B.   Plaintiff, Michael Perselay's Claims For Back Pay

Plaintiff, Michael Perselay's, allegations of back pay for any alleged wrongdoing on behalf of 69 Main Street, LLC d/b/a Fox and Hound Tavern, as well all of the co-defendants, should be limited to the approximately three week period of time he was unemployed prior to obtaining subsequent employment at Equus Tavern. The Supreme Court of New Jersey has held that the plaintiff may recover back pay and front pay damages for diminished earning capacity "provided there is sufficient proof, both to establish the injury role and impair his future income, and to quantify the lost income." *Donelson v. Dupont Chambers Works*, 206 *N.J.* 243, 292-93 (2011). *Citing Frugis v. Bracigliano*, 177 *N.J.* 250, 285 (2003). Clearly, the only back pay that the plaintiff can quantify is the three weeks of lost income from the time he left Fox and Hound Tavern on January 31, 2008, until the time he obtained subsequent employment at Equus Tavern mid to late February 2008.

The plaintiff, Michael Perselay, has testified that in February of 2008 he obtained employment as an Executive Chef with Equus Tavern, earning roughly the same salary as he was making at the Fox and Hound Tavern. Therefore, the measure of any award for

back pay, should the plaintiff be entitled to same, should be capped at said three week period.

Other than this three week time frame, plaintiff, Michael Perselay, has failed to provide proof for any other quantifiable award for back pay. As such, the Court should limit any award for back pay to the sum of $4,903.85, less Perselay's unemployment compensation. This figure represents the three (3) week's salary at the rate of $85,000 per year, which plaintiff was earning at Fox and Hound Tavern at the time of his termination.

Plaintiff, Michael Perselay has also failed to provide any expert evidence in order to quantify any other back pay award should be successful in this litigation.

In light of the arguments set forth above, plaintiff, Perselay's claims for back pay should be limited to the sum of $4,903.85, less the unemployment compensation received, as his measure of damages.

Respectfully submitted,
LAW OFFICES OF BRIAN M. MURPHY

By: _____
Patrick M. Little
Attorney for Defendants
69 Main Street, LLC, George Donzella,
and Thomas Stiner

Dated: July 23, 2012